C.F. BRAUN & CO.; Robert L. Scott; Jones & Pellow Oil Co.; Robert S. Bowers; Virgil L. Boll; John B. Reinhart; and James R. Biddick, Appellants,

v.

The CORPORATION COMMISSION of the State of Oklahoma; Leonard S. Fowler; and Argonaut Energy Corporation, Appellees.

No. 61448.

Supreme Court of Oklahoma.

June 23, 1987.

Watson & McKenzie by H.B. Watson, Jr. and Richard K. Books, Oklahoma City, for appellants.

McAfee & Taft, P.C. by Stanley L. Cunningham and Lawrence M. Huffman, Oklahoma City, and Underwood, Wilson, Barry, Stein & Johnson by Edward H. Hill, Amarillo, Tex., for appellee, Argonaut Energy Corp.

LAVENDER, Justice:

This is the third in a series of appeals involving Corporation Commission pooling proceedings in Cause C.D. No. 50230. The original order appealed, Order No. 135114,

had pooled the interests in thirteen common sources of supply underlying Section 16, Township 20 North, Range 23 West, Ellis County, Oklahoma. That order had provided that the parties could elect to participate in the unit well to either one of two target horizons. The order also provided that such an election implicitly included a decision to participate in all common sources of supply overlying the chosen horizon. Appellants elected to participate to the first target horizon, the Morrow Sands, a depth of approximately 10,500 feet. Leonard S. Fowler, the designated unit well operator under the order, planned to take the well to the Hunton Lime, the second elective horizon, at a depth of approximately 13,000 feet. The Commission order set forth a method of allocating costs between the two horizons.

Appellants challenged the initial order on two grounds. The first argument was based on the assertion that it was improper to, in effect, treat the thirteen common courses of supply as two pooled units. Appellants asserted a right to elect to participate as to each individual common source of supply. This Court rejected that argument and approved the pooling order's treatment of the two proposed target horizons as separate units.[1] However, the Commission's order was reversed on the second ground raised, that being a lack of evidentiary support behind the Commission's proposed cost allocation formula. In reversing the Commission's order, this Court stated:[2]

> The Commission, taking judicial notice of "prior orders, adjusted well cost allocation on varying bases depending upon the operational facts of the particular case," did. not meet the minimum standards of due process, and that part of the order which relates to the participation formula is not supported by substantial evidence.

Prior to the time this Court issued its opinion in the first appeal, the unit well, the State No. 1, was completed to total depth in the Hunton Lime. The well was declared to be nonproductive and was abandoned and plugged. Subsequently, appellee Argonaut Energy Corporation, the successor in interest to appellee Leonard S. Fowler, sought an order from the Commission properly allocating costs between the participating parties.

In Order No. 176445, the Corporation Commission adopted a cost allocation formula assessing costs between the parties. Appellants again challenged the Commission order, this time on numerous grounds, including the standing of appellee Argonaut Energy Corporation to seek the cost allocation order. This second appeal was assigned by this Court to the Court of Appeals, Division I. The Court of Appeals' opinion in the case[3] reversed the Commission order, stating:

> Although as pointed out by Appellee and borne out by the record, the Commission merely entered its order on a purported formula as contended by Appellants at the first hearing. We agree with Appellants in the appeal now before this Court, that the Commission committed error in not allowing them to present evidence at the remanded hearing for the purpose of determining the costs of the unit well.

> Accordingly, only that portion of the Commission's actions in setting out the formula to be followed in ascertaining costs to the parties in the appeal now before this Court is reversed and remanded with instructions to set same down for a hearing and allow the parties to produce evidence, and from said evidence determine the costs to be assessed against Appellants. See 52 O.S.Supp. 1977–1980, § 87.1(e).

Appellant's petition for writ of certiorari was subsequently denied by this Court on September 2, 1981, and mandate issued on September 10.

On October 20, 1982, appellee Argonaut Energy Corporation filed a motion before

---

1. *C.F. Braun & Co. v. Corporation Commission*, 609 P.2d 1268, 1272 (Okla.1980).

2. 609 P.2d at 1273, 1274.

3. *C.F. Braun & Co. v. Argonaut Energy Corp.*, No. 55,949 (Okla.App. June 8, 1982).

the Corporation Commission seeking an evidentiary hearing to be set for the purpose of properly allocating well costs. A date for this hearing was set and notice given by order of the Commission, which referred the matter to a trial examiner.

Hearing was held before the trial examiner on December 8 and 15, 1982. Both appellants and appellee presented testimony. Appellee, Argonaut Energy Corporation presented evidence in support of its proposed cost allocation. The actual method behind its proposed allocation was suggested as one of a series of alternatives in Bulletin No. 2 of the Council of Petroleum Accountants Societies of North America. Under this method the actual costs attributable to specific formations, such as the costs of testing a formation, are to be deducted from overall costs, the unassignable costs are then to be divided on the basis of drilling time, and the assignable costs then added back into the respective assigned costs. In this case, it was determined that total drilling time was 64.6875 days. It had taken 38.075 days to drill to the base of the Morrow Sand. The exhibits presented by Argonaut Energy demonstrated that the costs attributable to the formations had been deducted and the remaining costs multiplied by 38.075/64.6875 to arrive at the proportion of unassignable costs to be allocated between all parties participating down to the Morrow. To this sum were then added the costs directly assignable to reaching and testing the Morrow and the total allocated between all parties participating to that point. The remaining portion of the unassignable costs were added to the costs assignable to the formations below the Morrow and were then allocated out to those parties participating to total depth.

The testimony elicited by appellants challenged both the propriety of this method of cost allocation and the prudency of Argonaut Energy's operations in the well.

The report of the trial examiner recommended that the cost allocation proposed by Argonaut Energy be adopted. The trial examiner also found that the operations in the well had been properly conducted.

Appellants filed exceptions to the report of the trial examiner, and argument on these exceptions was presented to the Commission en banc. At the close of this argument, the Commission took the case under advisement.

On November 9, 1983, the Commission issued Order No. 248200. In this Order the Commission found that total actual and reasonable well cost for the State No. 1 well was $966,039.08, and adopted the drilling time allocation formula as applied by appellee Argonaut Energy. Under this formula the costs assessed to all interest owners participating down to the Morrow were $335,641.75; of this amount the costs to these appellants were $209,776.09. In this regard the Commission also found that Argonaut Energy had standing to bring the action for determination of well costs and that Argonaut Energy had acted as a prudent operator in drilling and completing the well.

Appellants now challenge Order No. 248200, alleging three grounds of error: first, that the drilling time cost allocation is arbitrary, capricious and produces unfair results and that it is not supported by the evidence; second, that appellants received no benefit from the well and that they should therefore not be made to pay; and third, that Argonaut Energy lacked standing to initiate the well cost allocation proceedings.

I.

Appellants argue that the result of the assorted defects in the Commission's order under the first two grounds alleged would be a deprivation of property without compensation and thus a violation of their rights under both the State and Federal Constitutions.[4] As a result of this asserted constitutional violation, appellants maintain that this Court must exercise its own independent judgment of both the law and the facts.[5] This Court addressed this matter in

4. Specifically, Okl.Const. Art. II, §§ 23 and 24, and U.S. Const. Amends. V and XIV.

5. Okl.Const. Art. IX, § 20.

the case of *Anderson-Prichard Oil Corp. v. Corporation Commission,*[6] and stated, in reference to the applicable standard of appeal:

It will be noted that the above section of our Constitution [Art. IX, § 20] makes two provisions relative to the duty and power of this court in considering appeals from orders of the Corporation Commission. In those appeals involving an "asserted violation of any right of the parties" under either the State or the Federal Constitution, "the Court shall exercise its own independent judgment as to both the law and the facts."

. . . .

Anderson-Prichard here contends and asserts that the order of the Commission appealed from is violative of its rights under both the due-process clause of the Oklahoma Constitution, art. 2, § 7, and the Fourteenth Amendment to the Constitution of the United States. We think it clear that whether the order appealed from falls within the first or the second category [of the constitutional provision], it must be lawful and supported by competent and substantial evidence. . . .

■ The order of the Commission before us for review is a lawful order. To be lawful, an order of the Commission entered pursuant to its powers regarding the conservation of oil and gas, must be in strict conformity with the powers granted and must be clearly within the limits of those powers.[7] The power and authority to provide for the payment of costs of development and operation of a unit well, and to determine disputes relative to those costs, has clearly been granted to the Commission.[8] The present order has definitely been entered within this grant of authority.

The remaining question is whether the order appealed is supported by competent and substantial evidence. We shall thus, upon a full consideration of the record presented, determine whether the Commis-

sion order is supported by the evidence in those particulars addressed by appellants.

## II.

■ Appellants' first argument addressed to the propriety of the Commission's order is that, because the drilling time allocation formula is based on assessing a portion of total costs to those not participating to total depth, they are being forced to pay a portion of the costs incurred below the formations which they elected to participate in. This assertion is simply without merit. Both the testimony presented to the Commission and the extensive exhibits filed by appellee Argonaut Energy show that under the cost allocation method adopted by the order, those cost factors clearly attributable to particular formations are to be borne only by those participating in those formations. The remaining unallocable costs are then divided on the basis of drilling time to the respective formations.

The true thrust of appellants' argument is that a problem developed below the Morrow Sand which lengthened the total drilling time. Appellants assert that this resulted in an increase in the drilling costs assessed against them. This is simply not true. The number of drilling days to the base of the Morrow Sand determined the numerator of the fraction of costs to be assessed to appellants. All remaining drilling time to total depth determines the deminator of that fraction. Thus, the costs to appellants could not increase. This may be illustrated by a simple example using a fixed drilling cost of $1,000 per day. If the time to drill to the Morrow Sand had been 50 days, and the time to drill to completion a total of 75 days, the costs assessed to those participating to the Morrow would be fixed at $50,000. If, as in the present case, a problem arose in drilling below the Morrow, which resulted in drawing the time of completion out to 100 days, the costs of those participating only down to the Mor-

6. 205 Okl. 672, 241 P.2d 363, 368 (1951), app. dismissed 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed.2d 696; see also *Carter Oil Co. v. State,* 205 Okl. 541, 240 P.2d 787, 796 (1951).

7. *Carter Oil Co. v. State,* 240 P.2d at 794.

8. 52 O.S.1981 § 87.1(e).

row would remain fixed at $50,000 on the basis of now multiplying those costs times a factor of 50/100 rather than by 50/75 as in the trouble free hypothetical.

On a review of the record we find the drilling days method of cost allocation as adopted in Order No. 248200 to be rational and reasonable and supported by the weight of the evidence. The testimony which appellants would suggest detracts from this finding simply does not have that effect.

### III.

■ The next argument presented by appellants is based on their premise that it would be confiscatory to require them to pay a portion of the well costs because they received no benefit from the well. As grounds for this assertion, appellants maintain that appellee Argonaut Energy failed to properly test the Morrow Sand, failed to attempt to complete the well in this formation, and failed to leave the well in condition where appellants could further test the formation.

Witnesses for Argonaut Energy testified that the Morrow formation had been adequately tested, both by drill stem testing and by induction and compensated sonic logging. As a result of this testing Argonaut had determined that the Morrow lacked the necessary porosity to be completed as a producing formation and the decision was made not to incur extensive additional costs by cementing the formation. These witnesses also testified that methods were available to appellants whereby they could have come into the well and cemented the Morrow formation and conducted further testing after Argonaut Energy had announced its intent to abandon, had, according to the testimony of Argonaut's witnesses, been communicated to appellants.

In response to this testimony appellants' witness testified that the results of the drill stem test had not been communicated until approximately one year after the notice of intent to abandon, and that the hole had not been left in condition to allow further testing. This witness testified that it was his opinion, based on the results from the tests run, that the Morrow should have been cemented and completion as a producing formation attempted.

Appellants argue that the reason that Argonaut reached the opposite conclusion regarding further development of the Morrow was that it would not have been in Argonaut's best interest to make such expenditures. The record fails to support this argument. While it is true that possible production from the Morrow Sand would have resulted in a smaller split because of the larger number of parties involved, it is also true that the costs of completion for this formation would also have been apportioned on the same percentage.

The record in this case supports the Commission's conclusion that Argonaut's operations in drilling and completing the unit well were reasonable and prudent. Appellants in this case received as much benefit from these operations as any other party who has elected to participate in a well which comes up as a dry hole. Accordingly, the provision of the Commission's order providing that appellants pay their proportionate part is proper and will be upheld.

### IV.

■ The final proposition presented by appellants is their argument that the Commission's order was improper due to Argonaut Energy's lack of standing to initiate the well cost determination proceedings. This argument was presented to the Court of Appeals, Division I, in the second appeal in this case.[9] The Court of Appeals decided that question adversely to appellants. The subsequent mandate made the decision on this question conclusive.[10] This is true because the question was conclusively de-

---

9. Supra, at note 3.

10. *In re Estate of Severns,* 650 P.2d 854 (Okl. 1982).

termined under the doctrine of the settled law of the case.[11]

## V.

Having examined the entire record in this case and determined that the Commission's action was within the scope of its authority, was in conformance to the prior mandates of this Court [12] and, in the judgment of this Court, is supported by competent and substantial evidence, Order No. 248200 is hereby affirmed.

All the Justices concur.

---

**11.** See *Howard v. Owens,* 142 Okl. 82, 285 P. 5 (1929), cert. den. 282 U.S. 840, 51 S.Ct. 21, 75 L.Ed. 746.

**12.** See *West Edmond Hunton Lime Unit v. Young,* 325 P.2d 1047 (Okl.1958).