2010 OK 88

**SUNDOWN ENERGY, L.P.,**
Respondent/Appellant,

v.

**HARDING & SHELTON, INC.;** Dominion Exploration Mid–Continent, Inc.; Tex–Star, Inc.; and JMA Resources, Inc., Applicants/Respondents/Appellees,

and

The Corporation Commission of the State of Oklahoma, Appellee.

No. 102,248.

Supreme Court of Oklahoma.

Dec. 14, 2010.

Tim W. Green, Guthrie, OK, for Appellant, Sundown Energy, L.P.

Gregory L. Mahaffey, Deena R. Tyler, Ryan W. Sears, Lee D. Groeneveld, Mahaffey & Gore, P.C., Oklahoma City, OK, for Appellee, Harding & Shelton, Inc.

Eric R. King, John M. Benson, Daniel A. Nickel, Gable & Gotwals, Oklahoma City, OK, for Appellee, Dominion Exploration Mid–Continent, Inc.

Roger A. Grove, Grove & Hulett, P.C., Oklahoma City, OK, for Appellee, Tex–Star, Inc.

Charles L. Helm, Helm & Boone, Oklahoma City, OK, for Appellee, JMA Resources, Inc.

Michele O'Neill Craig, Michael Decker, Oklahoma Corporation Commission, Oklahoma City, OK, for Appellee, Oklahoma Corporation Commission.

Mark D. Christiansen, Crowe & Dunlevy, Oklahoma City, OK, for Amicus Curiae,

Oklahoma Independent Petroleum Association.

HARGRAVE, J.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶ 1 The Corporation Commission, on November 6, 1985, entered Pooling Order (P.O.) No. 289640 which force pooled nine common sources of supply and established a 640–acre drilling and spacing unit underlying Section 20, Township 16 North, Range 18 West in Dewey County, Oklahoma hereinafter referred to as Unit 1. These common sources of supply were the Douglas Sand, Tonkawa, Cottage Grove, Oswego Lime, Cleveland Sand, Cherokee Sand, Morrow, Springer, and Chester Lime. These are "upper" formations. Dominion obtained some of these interests and is the current operator of the Rounds No. 1–20 well located in Unit 1. Dominion owns about 14.9% interest of record in Unit 1. Sundown owns a working interest of approximately 10.33% in Unit 1.

¶ 2 Harding & Shelton, Inc.(H & S) subsequently acquired a leasehold interest of 480 acres in Unit 1. H & S acquisition included leasehold interests in the unpooled formations below the Unit 1 formations which are not included in P.O. No. 289640. These formations, hereinafter referred to as Unit 2, consist of the unpooled formations below the Unit 1 formations.

¶ 3 In 2004, H & S filed an amended application seeking to clarify the rights and interests of the mineral owners of Unit 1 in the nine formations covered by P.O. No. 289640, as well as pooling those of Unit 2 in the lower unpooled formation of Atoka, Mississippi Lime, Hunton, and Viola, which underlie the formations covered by P.O. No. 289640. H & S proposed to drill a well in Section 20, the primary target being the Hunton formation in Unit 2. This proposal, would require H & S to drill a well through both the previously pooled upper formations of Unit 1 and into the other lower pooled formations of Unit 2 to reach the Hunton. H & S's expert testified that the Hunton was the target formation but that the Hunton and Atoka were primary zones of interest, with the Mississippi and Chester as secondary objectives.

¶ 4 Based on the application of H & S, the Oklahoma Corporation Commission entered P.O. No. 497550, dated November 16, 2004, allowing H & S to pool the deeper formations of Unit 2, which were underlying those formations previously pooled as Unit 1 by P.O. No. 289640, exclusive of the Rounds No. 1–20 well. The Commission denied H & S's request to include those formations of Unit 1 covered by P.O. No. 289640 with the deeper formations of Unit 2. Thus, the Commission, in effect, created two units, Unit 1—the shallow, upper formations, and Unit 2—the lower, deeper formations. In its order, the Corporation Commission determined that to allow Unit 1 covered by P.O. No. 289640 to be pooled with Unit 2, the deeper formations, constituted an impermissible collateral attack upon the original pooling order. The Commission appointed H & S as operator of the deeper units and pooled the deeper common source of supply of the Atoka, Mississippi Lime, Hunton Lime, and Viola. H & S appealed the order that granted in part and denied in part their application.

¶ 5 The Oklahoma Court of Civil Appeals, Division I, affirmed the H & S application as set out by the Commission's P.O. No. 497550 in *Harding & Shelton, Inc. v. Sundown Energy, Inc.*, 2006 OK CIV APP 12, ¶ 13130, 130 P.3d 776, 779. The Court of Civil Appeals noted that the 1985 pooling order finally determined the rights and obligations of mineral owners "in the affected common source(s) of supply, because to hold otherwise would cast the established rights and obligations of any holder of a mineral interest in the previously pooled common source(s) into chaos every time there was a change in ownership of mineral or leasehold rights in any pool formation." The 1985 order was held to be impervious to collateral attack, because there was no evidence of a cessation of production so as to nullify the order, and because there was no attempt to show a change of condition or knowledge of conditions so as to render modification proper. Applicants were thus unsuccessful in seeking to re-pool the formations covered by

the 1985 order and to pool the deeper formations that had not previously been pooled underlying the same 640 acres.

¶ 6 Subsequently, in November 2004, H & S filed an application seeking the following relief from the Oklahoma Corporation Commission:

(1) to clarify, amend, modify, and supplement P.O. 289640 to determine that the pooled common sources of supply (Unit 1) were pooled as a unit and did not pool only the borehole (Rounds No.1–20);

(2) to determine P.O. 289640 was still in force and effect;

(3) to determine that any owner who elected an alternate to participation in the initial well drilled pursuant to Order No. 289640 is deemed not only to have relinquished all of its working interest and right to drill in said unit and said common sources of supply as to the initial well drilled, but also as to any wells drilled subsequent thereto, and to make provisions for subsequent wells drilled on the unit for those parties who participated in the initial well drilled pursuant to said order, and;

(4) to amend P.O. 289640 to designate H & S as operator of all subsequent wells.

Sundown protested.

¶ 7 An administrative-law judge recommended that H & S's application be granted. The Oklahoma Corporation Commission ultimately granted the relief requested by H & S, and Sundown brought the instant appeal. The Court of Civil Appeals reversed, noting that the Commission's 2005 order required "Sundown to surrender its interests in the formations of Unit 1 and its opportunity to other future development therein if it fails to participate in drilling a well to the deeper formation of Unit 2, in which it does not own an interest ..." Although the order allows Sundown Energy to pay its proportionate share of the cost of drilling to the deepest formation, the Court of Civil Appeals concluded that if the well is completed, then "Sundown will be required to pay its proportionate share of costs, but will not share in the revenue from the deeper formation of Unit 2 because it does not own an interest in

the Unit 2 formations pooled." We grant Certiorari to review this holding.

### STANDARD OF REVIEW

¶ 8 The Oklahoma Constitution at Article 9, § 20 sets forth the standard of review for appeals from orders of the Oklahoma Corporation Commission and states as follows in relevant part:

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

"An appeal from a Corporation Commission order rest solely in the Oklahoma Supreme Court. If the appeal asserts a violation of constitutional rights, the Supreme Court shall exercise its own independent judgment on questions of both law and interpretation of facts. This Court will, however, determine constitutional questions only if necessary to adjudicate the rights of the parties." *Ranola Oil Co. v. Corporation Com'n.*, 1988 OK 28, ¶ 7, 752 P.2d 1116, 1118.

¶ 9 The Commission has a wide discretion in the performance of its statutory duties, and this Court may not substitute its judgment upon disputed factual determinations for that of the Commission but is restricted to a determination of substantial evidentiary support for the order issued under authority of the statutes. *Union Texas Petroleum v. Corporation Com'n.*, 1981 OK 86, ¶ 31, 651 P.2d 652; *In re Application of Continental Oil Company*, 1962 OK 131, 376 P.2d 330. Searching a record for substantial evidence supporting the order appealed does not entail a comparison of the parties' evidence to determine that which is most con-

vincing but only that the evidence supportive of the order be considered to determine whether it implies a quality of proof inducing a conviction that the evidence furnished a substantial basis of facts from which the issue could be reasonably resolved. *Union Texas Petroleum v. Corporation Com'n*, 1981 OK 86, ¶ 31, 651 P.2d 652, *Chenoweth v. Pan American Petroleum Corp.*, 1963 OK 108, 382 P.2d 743. Substantial evidence has been additionally outlined as something more than a scintilla; possessing something of substance and of relevant consequence carrying with it a fitness to induce conviction, but remains such that reasonable persons may fairly differ on the point of establishing the case. A determination of substantial evidentiary support does not require weighing the evidence but only a measurement of the supportive points to determine whether the criterion of substantiality is present. *Union Texas Petroleum v. Corporation Com'n*, 1981 OK 86, ¶ 31, 651 P.2d 652 *Central Okla. Freight Lines v. Corporation Com'n*, 1971 OK 57, 484 P.2d 877, 879.

## ARGUMENTS AND ANALYSIS

¶ 10 In the instant matter, H & S is arguing that the Court of Civil appeal's opinion is a misguided effort to protect Sundown, because, among other things, it ignores the safeguards placed in the Commission's order for allocation of well costs. They further argue that the order provides a method of cost allocation to fairly account for drilling a well through multiple formations with varied ownership and insists that Sundown would not be charged anything more than was required to drill and complete a well in those zones in which it owns an interest. H & S also argue that Sundown would receive the benefit of gaining valuable geological information in the drilling and that the operator might just as easily complete a well in a formation in which Sundown holds an interest.

¶ 11 Sundown argues that the original Unit 1 1985 pooling order bestowed upon them a valuable property right vested under a pooling order that could not be extinguished. They argue that they risked capital and revealed useful scientific data in the drilling of the initial well, and do not believe they should financially support H & S's deep test or surrender their earned, vested, unit rights.

¶ 12 The Amicus Curiae, Oklahoma Independent Petroleum Association, argue that the holding of the Oklahoma Court of Civil Appeals would remove upper rights owners from the purview of Oklahoma's compulsory pooling procedures in a multitude of cases due to the possibility that an "economic disadvantage might fall on the shallow rights owners." They further argue that the goals of compulsory pooling procedure in Oklahoma would be contravened by the inability to force pool upper rights owners in matters involving deeper formations. They argue the only approach that is workable is to "force pool all appropriate owners in the pooled formations as to all depths, irrespective of whether some parties own rights as to all depths, or only as to certain depths. The Commission can then include appropriate provisions to adjust for the equities when it prepared the terms of the pooling order."

¶ 13 The issue before us is not novel. This Court has addressed similar issues in *C.F Braun v. Corporation Com'n.*, 1980 OK 42, 609 P.2d 1268 ("*Braun I* ") and *C.F Braun v. Corporation Com'n.*, 1987 OK 52, 739 P.2d 510 ("*Braun II* "). In *Braun I,* the appellants owned leaseholds in thirteen formations previously established as thirteen separate drilling and spacing units. The Appellee applied seeking to pool all thirteen and proposed drilling a Hunton well 13,500 feet below the surface. The Appellants proposed to drill a Morrow well 11,000 feet below the surface. The Commission entered an order pooling the units and establishing a cash bonus or overriding royalty schedule for each formation, depending upon whether an owner elected to participate in the costs in all formations. The Corporation Commission determined "that any election to drill to a specified formation, shall, by implication, include the election to drill to any and all formations shallower than the said formation." *Braun I,* 1980 OK 42, ¶ 2, 609 P.2d 1268, 1269. After this order was entered, the *Braun I* Appellants elected to accept the cash bonus for each of the eight formations above the Morrow Sand and to participate in the Mor-

row, and to accept the cash bonus and excess override in the deeper formations. The Appellees rejected this election. This Court found the election of the cash bonus for the eight formations above the Morrow to be in error as to the Commission pooling order.

¶ 14 This Court found that the issue of whether an owner is entitled to elect as to each common source or unit depends on the facts and circumstances in each pooling proceeding. *Braun I*, 1980 OK 42, ¶ 10, 609 P.2d 1268, 1271. This Court further held that the Commission order effectively created two different units as to common source of supply and that the Appellants could only treat the shallower Marrow and the formations above it as one unit. *Braun I*, 1980 OK 42, ¶ 14–15, 609 P.2d 1268, 1272.

¶ 15 In the latter case, *Braun II*, the appellants argued, as Sundown does in the present case, that they should not be required to pay for formations in which they had no interest in participating and that forcing them to do so would be a deprivation of property without compensation and thus a violation of their rights under both the State and Federal Constitutions.

¶ 16 This Court found the Corporation Commission's order to be lawful in *Braun II* and that it was supported by competent and substantial evidence. The fact that the well was going into other formations in which the appellants had no interest did not bar their participation for the exploration into the formations into which they held an interest.

> Both the testimony presented to the Commission and the extensive exhibits filed by Appellee Argonaut Energy show that under the cost allocation method adopted by the order, those cost factors clearly attributable to particular formations are to be borne only by those participating in those formations.

*Braun II*, 1987 OK 52, ¶ 15, 739 P.2d 510, 513.

¶ 17 The Oklahoma Corporation Commission applied the same cost allocation method in the present matter. Furthermore, in *Braun II* this Court addressed the confiscation argument by finding:

> The record in this case supports the Commission's conclusion that Argonaut's operations in drilling and completing the unit

well were reasonable and prudent. Appellants in this case received as much benefit from these operations as any other party who has elected to participate in a well which comes up as a dry hole. Accordingly, the provision of the Commission's order providing that appellants pay their proportionate part is proper and will be upheld.

*Braun II*, 1987 OK 52, ¶ 22, 739 P.2d 510, 514.

¶ 18 In *Marathon Oil Co. v. Corporation Com'n*, 1982 OK 19, 651 P.2d 1051, a similar issue arose. Marathon Oil held a deep interest and was required to pay a proportionate share of exploration. This Court opined:

> The argument here advanced fails to attend to the operative fact that in this application for a forced pooling order the application looks at a test of the Mississippi formation. Concededly, a protestant can object effectively to a pooling order requiring him to test a formation in which he has no ownership. In the cause here appealed such is not the case, however. Appellant has been pooled to require an election relative to a test of the Mississippi. Protestant has a 310/640 interest in that formation in the governmental section drilling and spacing unit. The Atoka is agreed to lie above the formation this well was targeted for. It is equally clear that a test well must traverse the horizon of the Atoka to reach the Mississippi. Neither the fact the hole to be drilled will pass through the anticipated Atoka depth, nor the fact that Marathon owns no interest in that formation, has a bearing upon the Commission's power to pool the rights of the owners of the right to drill the Mississippi. The bore must pass though all intermediate strata before reaching the target formation and the protestant was required only to pay for a test of his lease interest in the section. The order correctly limits itself to costs of a Mississippi completion or dry hole, and under that order if the lower formation is dry the Marathon Company is responsible for its share of the non-producing hole. If the bottom is nonproductive and the Atoka is completed, the additional cost of that completion is borne solely by Kaiser–Francis. The order does not require Marathon to contribute to a completion other than the Mississippi.

The appellant is thus shown to be properly assessed for his proportionate share of the total cost of the deeper strata's test. The Commission's provision for payment of the cost of participation as an election is within the Commission's authority. The cost of the proposed well stands uncontradicted in the record, and we therefore find the order's provision for the cost of participation is affirmed.

*Marathon Oil Co. v. Corporation Com'n,* 1982 OK 19, ¶ 8, 651 P.2d 1051, 1053–1054.

 ¶ 19 52 O.S.2001 § 87.1 grants the Commission power to protect correlative rights by the establishment of spacing units and the setting of allowable production. This allows protection of the public interest in orderly development and production of resources and the prevention of the drilling of unnecessary wells. *Samson Resources v. Corporation Com'n,* 1987 OK 73, ¶ 11, 742 P.2d 1114, 1115. Section 87.1 provides two other avenues for the exercise of Commission jurisdiction over the public interest in correlative rights. To prevent drainage from offsetting production the Commission may allow additional well locations in a spacing unit. To prevent drainage and the concomitant waste occurring in a unit in which interest owners are not able to come to terms regarding voluntary development, the Commission is empowered, upon proper application, to order those interests pooled. This allows an orderly development of the common source of supply. Aside from the recognized power to monitor certain terms and conditions of the contract imposed on the parties through a forced pooling order, no other powers to protect correlative rights are granted or implied by this statute. *Samson Resources v. Corporation Com'n,* 1987 OK 73, ¶ 11, 742 P.2d 1114, 1115.

 ¶ 20 When reviewing the sufficiency of the evidence supporting the Corporation Commission's findings of fact, this Court's review is restricted to determining whether the Commission's findings and conclusions are sustained by the law and substantial evidence. Okla. Const., art. 9, § 20. Such a review does not include weighing the evidence on appeal, but only determining whether the supporting evidence possesses substance and relevance. *Currey v. Corporation Com'n,* 1979 OK 89, ¶ 10, 617 P.2d 177, 179, and *Miller v. Corporation Com'n,* 1981 OK 55, ¶ 6, 635 P.2d 1006, 1007. This process does not entail comparing the evidence of the parties, but includes determining if the evidence supporting the order furnishes a substantial basis of facts from which the issue could be reasonably resolved. *Union Texas Petroleum v. Corporation Com'n,* 1981 OK 86, ¶ 31, 651 P.2d 652. We find the evidence supports the Commission's findings.

 ¶ 21 In the present matter, H & S obtained from the Commission the authority to drill an increased density well into the Chester Lime as well as the right to drill into the deeper formations of Unit 2. The Corporation Commission protected the original Round No. 1–20 well leaving Dominion as the operator. H & S was designated as operator of any subsequent wells, and Dominion and Sunset were allowed to participate in any subsequent wells based upon the COPAS cost allocation method of fixing their proportionate cost of participation. Although production might be made from the deeper pooled common sources of supply, it is just as possible that production might be taken from the upper pooled source of supply in which Sundown holds an interest. Sundown, under the cost allocation method, would only be responsible for their proportionate cost of production and if they elected to participate, would reap the benefits of the exploration should there be production from pooled sources of supply in which they hold an interest, as well as the geologic information from the drilling. Therefore, we find that the order of the Commission is supported by competent and substantial evidence and P.O. No. 289640 is affirmed.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE CORPORATION COMMISSION AFFIRMED.**

¶ 22 CONCUR: EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WATT, WINCHESTER, COLBERT, JJ.

¶ 23 DISQUALIFIED: REIF, J.