OSCN Found Document:EXTERRAN HOLDINGS v. ABONZA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 EXTERRAN HOLDINGS v. ABONZA
2023 OK CIV APP 33
Case Number: 120569
Decided: 08/30/2023
Mandate Issued: 09/28/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV

Cite as: 2023 OK CIV APP 33, __ P.3d __

 

EXTERRAN HOLDINGS, INC., and ZURICH AMERICAN INSURANCE CO., Petitioners,
v.
J. ASUNCION (SOTO) ABONZA, and THE WORKERS' COMPENSATION COMMISSION, Respondents.

PROCEEDING TO REVIEW AN ORDER OF THE OKLAHOMA
WORKERS' COMPENSATION COMMISSION

HONORABLE P. BLAIR MCMILLIN, ADMINISTRATIVE LAW JUDGE

SUSTAINED

Michael A. Fagan, Heather A. Lehman Fagan, Jacob P. Jean, FELLERS, SNIDER, BLANKENSHIP, BAILEY & TIPPENS, P.C., Oklahoma City, Oklahoma, for Petitioners

Bret A. Unterschuetz, Tulsa, Oklahoma, for Respondent

HUBER, JAMES R., JUDGE:

¶1 Exterran Holdings, Inc. and Zurich American Insurance Co. (collectively, Employer) seek review of an order issued by the Workers' Compensation Commission en banc (Commission), reversing and remanding an Administrative Law Judge (ALJ) decision and finding J. Asuncion (Soto) Abonza (Claimant) sustained a compensable occupational disease (silicosis) and a compensable cumulative trauma injury in the course and scope of his employment.

BACKGROUND

¶2 Employer manufactures natural gas compression equipment for the oil and gas industry. Claimant worked for Employer for approximately eight years. His duties included sandblasting and painting oil and gas related equipment. On September 24, 2015, Claimant ceased working for Employer after becoming fatigued and having difficulty breathing. He was subsequently diagnosed with silicosis and interstitial lung disease.

¶3 Claimant filed two claims for compensation alleging an injury to his lungs and respiratory system as a result of occupational disease and cumulative trauma. On December 10, 2015, Claimant filed a CC-Form-3 alleging cumulative trauma with injury to his lungs and respiratory system due to exposure to smoke, sand, and chemicals (Claim Number CM-2015-08100F). He filed a second claim, CM-2016-03867H, on June 16, 2016, alleging an occupational disease of silicosis. Employer denied Claimant sustained a compensable injury. The Commission consolidated these claims on August 18, 2016.

¶4 In addition, Claimant filed these claims in the Court of Existing Claims (CEC). The Commission entered an order holding his claims before the Commission in abeyance until resolution of the claims before the CEC. The CEC cases were subsequently dismissed. Judge Michael W. McGivern found Claimant's date of awareness in both claims was in September 2015, and, therefore, the CEC did not have jurisdiction and the Commission was the proper forum.

¶5 Claimant appealed the CEC decision. On appeal, the Oklahoma Court of Civil Appeals sustained the decision.[1] The Court found that the CEC "made no determination regarding the merits of Claimant's claims" and "merely decided that jurisdiction to adjudicate such claims lies with the Workers' Compensation Commission." The Court determined that the Commission was the appropriate forum to address the merits of Claimant's workers' compensation claims.

¶6 The Commission entered an Order Lifting Abeyance filed on December 12, 2019, allowing the claims to proceed. An ALJ conducted a hearing on January 26, 2021, on the issue of compensability for injury to the lungs and respiratory system. Claimant asserted an injury due to cumulative trauma and occupational disease - silicosis. Claimant requested temporary total disability benefits and medical treatment. He reserved the issues related to permanent total disability benefits.

¶7 The parties agreed the date of awareness was September 24, 2015, but disagreed on the date of last exposure. Claimant asserted a date of last exposure of September 24, 2015, while Employer claimed the date of last exposure was in 2009-10 when Employer stopped using white sand and began using black sand.

¶8 Employer first argued Claimant was barred by res judicata from pursuing his claims before the Commission because he previously raised the issues before the CEC. Second, Employer argued Claimant's claim for occupational disease was time barred pursuant to 85A O.S. Supp. 2015, § 69(A)(2). Employer also argued Claimant did not sustain a compensable cumulative trauma injury or occupational disease and denied Claimant had any harmful exposure resulting in injury while working for Employer. Employer denied temporary total disability benefits and medical treatment.

¶9 At trial, Claimant testified, via a translator, that he worked as a sandblaster for Employer from 2007 until September 24, 2015. His job responsibilities included sandblasting and painting gas pipes for refineries. Prior to working for Employer, Claimant worked as a painter for ten years for a different employer but had not previously worked as a sandblaster.

¶10 While working for Employer, Claimant worked 40 hours per week, four days a week. He worked approximately 10 to 11 hours per day. During this time, Claimant sandblasted three days per week and painted one day a week.

¶11 When he began working for Employer, Claimant worked with white sand. Claimant stated there was a lot of white sand and dust in the air when he removed his mask, especially in the Tulsa facility. Claimant testified he removed the mask approximately five times per day and that he inhaled the sand daily.

¶12 Claimant explained that he sandblasted with the white sand containing silica in an enclosed space in Building 7, located in Tulsa, and that in an enclosed space, "the dust goes in. It just can't go anywhere."[2] The silica dust got under his mask when he worked in the enclosed area.

¶13 The parties agree that Employer switched from using white sand to black sand in 2009 or 2010. Claimant testified the black sand was more of a metal-based substance but still created dust, although not as much dust as the white sand. Regardless, Claimant inhaled this dust while working.

¶14 While painting, Claimant mixed the paint and painted. He also used paint thinner during the painting process. Claimant stated he wore a face shield while painting and he inhaled some of the fumes. He also sanded the items to be painted.

¶15 Claimant testified he had no previous breathing or respiratory problems and that he was not aware that he had any lung issues prior to September 24, 2015.

¶16 In addition, Claimant testified he had never smoked and had not been exposed to "any kind of dust or anything like that" outside of work. Claimant testified he began having breathing problems and became fatigued on September 24, 2015. He sought treatment at Access Medical Care. On September 26, 2015, Claimant was transported by ambulance to St. John's Medical Center, where he was examined, diagnosed with a large left-sided pneumothorax, and received a chest tube. On September 30, 2015, Robert Blankenship, M.D., a thoracic surgeon, performed surgery to repair Claimant's pneumothorax and did a biopsy of Claimant's lung tissue. Dr. Blankenship diagnosed Claimant with silicosis and interstitial lung disease. Claimant has not worked since September 24, 2015.

¶17 On cross-examination, Claimant testified about Employer's safety requirements. According to Claimant, Employer required Claimant to wear protective equipment while sandblasting and painting. While sandblasting, Claimant wore a full helmet with a filter. The helmet attached to a breathing apparatus that brought in air. Claimant testified Employer had a third-party test the respirator equipment to confirm the equipment fit properly and performed correctly. Claimant used the same helmet, mask, and breathing apparatus when sandblasting with white sand and with black sand. Claimant wore a face shield when painting instead of the full helmet. Employer also had exhaust fans that sucked the dust out of the building at the Broken Arrow facility but not at the Tulsa facility.

¶18 Claimant stated he did not recall Employer receiving any OSHA violations or warnings regarding dust or harmful substances in the area where he worked.

¶19 Claimant testified that he had x-rays of his chest and thoracic spine on March 2, 2011, because he was experiencing mobility issues. Claimant testified on cross-examination that no one told him that his 2011 x-ray revealed evidence of chronic pulmonary disease and he did not become aware of this until 2015. He also stated that, although there was a note from a physician saying Claimant should have another x-ray in two weeks, Claimant was unaware he was supposed to have a follow-up x-ray in 2011.

¶20 On cross-examination, Claimant denied giving Dr. Blankenship a history of breathing issues or lung problems. Claimant admitted that Dr. Blankenship prescribed Claimant work restrictions that he could not work around dust and was advised to protect his lungs.

¶21 In the ALJ's order filed on February 25, 2021, the ALJ rejected the Employer's argument that Claimant's claims before the Commission were barred by the doctrine of res judicata. The ALJ recognized that Claimant had pursued the same theories of liability before the CEC but noted that the CEC did not rule on the merits. Next, the ALJ found that Claimant's last date of exposure was in 2009 when Claimant last worked with white sand. The ALJ found Claimant filed his claim more than three years from the date of his last injurious exposure and, therefore, his occupational disease claim was not timely filed pursuant to 85A O.S. Supp. 2015, § 69(A)(2)(a)-(b). The ALJ denied and dismissed Claimant's occupational disease claim. The ALJ found Claimant did not sustain a compensable occupational disease or a cumulative trauma injury to his lungs and respiratory system and denied his claim for compensation.

¶22 Claimant appealed to the Commission. By order entered on June 24, 2022, the Commission found the ALJ's decision denying compensability was against the clear weight of the evidence and contrary to law. The Commission found Claimant was exposed to silica until he stopped working for Employer in September 2015 and, therefore, his claim was timely filed. In addition, the Commission made the following findings:

2. Claimant sustained a compensable occupational disease (SILICOSIS), with a date of awareness and a date of last exposure on September 24, 2019, in the course and scope of employment with [Employer].

3. Claimant sustained a compensable cumulative trauma injury to the LUNGS AND RESPIRATORY SYSTEM with a date of awareness and a date of last exposure on September 24, 2019, in the course and scope of employment with [Employer].

The Commission reserved issues related to permanent total disability. The Commission reversed the ALJ's Order and remanded for a determination of medical treatment and temporary total disability benefits.

¶23 Employer appeals.

¶24 On June 27, 2023, this Court entered an order directing the parties to address whether we should dismiss the appeal for lack of a final appealable order pursuant to Hermetics Switch, Inc. v. Sales, 1982 OK 12, 640 P.2d 963. Employer responded arguing Commission's order was a final appealable order and the appeal should not be dismissed. Claimant did not file a response to this Court's June 27, 2023, order.

STANDARD OF REVIEW

¶25 "The law in effect at the time of the injury controls both the award of benefits and the appellate standard of review where workers' compensation is concerned." Graham v. D & K Oilfield Servs., Inc., 2017 OK 72, ¶ 9, 404 P.3d 863, 866. In the present case, appellate review of the judgment is set forth at 85A O.S.2021, § 78(C).[3] Under Section 78(C), the Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision.

"[W]ith respect to issues of fact, the Commission's order will be affirmed if the record contains substantial evidence in support of the facts upon which it is based and is otherwise free of error." Mullendore v. Mercy Hosp. Ardmore, 2019 OK 11, ¶ 13, 438 P.3d 358, 363.

¶26 Generally, a statute-of-limitations question presents a mixed question of law and fact. Sneed v. McDonnell Douglas, 1999 OK 84, ¶ 9, 991 P.2d 1001, 1004.

ANALYSIS

¶27 Although neither party questioned this Court's jurisdiction, it is an appellate court's duty to inquire into jurisdiction and to dismiss the appeal if jurisdiction is non-existent. Long v. McMahan, 1952 OK 35, ¶ 3, 241 P.2d 185, 186.

¶28 As previously discussed, this Court ordered the parties to address whether the appeal should be dismissed for lack of a final appealable order pursuant to Hermetics Switch, Inc. v. Sales, 1982 OK 12, 640 P.2d 963. We noted that the Commission opined Claimant sustained compensable injuries and remanded to the ALJ "to determine Claimant's requests for medical treatment and temporary total disability benefits."

¶29 Employer filed a response on July 11, 2023, arguing that the Commission's order constituted a final determination of the parties' rights, and the order is ripe for appellate review. Employer alleged the issues on remand are "narrow in scope and do not permit the ALJ to evaluate or reconsider the Commission's findings." Employer argued the Commission found Claimant sustained a compensable occupational disease and cumulative trauma injury, which presented a final determination. Employer also asserted that dismissal of the appeal because the order lacked finality would be a waste of judicial economy and a financial hardship for the parties.

¶30 In Hermetics Switch, Inc., the Oklahoma Supreme Court was presented with a "narrow first-impression question" of whether a three-judge panel decision vacating the trial court decision and remanding the case for a "redetermination of all issues" was a non-reviewable interlocutory order. The Hermetics Court defined a "reviewable decision in a compensation case as one which 'makes or denies an award' or otherwise constitutes 'a final determination of the rights of the parties.'" Hermetics Switch, Inc. v. Sales, 1982 OK 12 ¶ 3, 640 P.2d at 965. The Court held that the issues on appeal were prematurely raised and the decision was a non-reviewable interlocutory order. Id. ¶¶ 6, 7, 640 P.2d at 965-67.

¶31 In Toney v. Parker Drilling Co., 1982 OK 17, 640 P.2d 1356, the Oklahoma Supreme Court was presented with the question of whether the denial of temporary total disability benefits presented a reviewable decision. In finding the decision was final, the Court noted:

It is not critical to reviewability that the allowance or denial of an award put an end to the litigation. Every order granting or refusing compensation -- no matter how far removed from the ultimate termination of the claim -- is reviewable if failure to appeal from it, or to seek review of it, will make the decision impervious to reconsideration and hence 'final'. In this context finality does not mean a quality of being terminal. Rather, it describes an attribute of being no longer within the reach of the trial tribunal's power to re-examine.

Id. ¶ 2, 640 P.2d at 1357 (citations omitted).

¶32 Here, the Commission determined that Claimant sustained a compensable occupational disease and a compensable cumulative trauma injury. This determination of compensability was a "final determination of the rights of the parties" and left no further action to be taken on that issue by the ALJ. The issue of compensability was "no longer within the reach of the [ALJ's] power to re-examine." We find the Commission's June 24, 2022, decision is a final appealable order.[4]

¶33 Next, the parties agree, and the evidence supports, that the Commission erroneously listed the date of awareness and the date of last exposure to be September 24, 2019, rather than September 24, 2015, in the Conclusion of the Order Vacating and Remanding the Decision of the Administrative Law Judge. This Court orders that the date in the Conclusion of the Order shall be corrected to reflect September 24, 2015, rather than September 24, 2019. The paragraphs 2 and 3 of the Conclusion shall now provide:

2. Claimant sustained a compensable occupational disease (SILICOSIS), with a date of awareness and a date of last exposure on September 24, 2015, in the course and scope of employment with [Employer].

3. Claimant sustained a compensable cumulative trauma injury to the LUNGS AND RESPIRATORY SYSTEM with a date of awareness and a date of last exposure on September 24, 2015, in the course and scope of employment with [Employer].

¶34 Employer first argues that Claimant is precluded from bringing his occupational silicosis claim under 85A O.S. Supp. 2015, § 69(A)(2)(b) because he did not timely file his claim. Section 69(A)(2)(b) provides:

b. A claim for compensation for disability on account of silicosis or asbestosis shall be filed with the Commission within one (1) year after the time of disablement, and the disablement shall occur within three (3) years from the date of the last injurious exposure to the hazard of silicosis or asbestosis.

¶35 It is undisputed that Claimant's disability for his occupational silicosis claim occurred in September 2015. Claimant's occupational silicosis claim was filed on June 16, 2016. Thus, Claimant satisfied the first prong of Section 69(A)(2)(b) -- that his silicosis claim be filed with the Commission within one year after the time of his disablement.

¶36 Employer argues that Claimant did not meet the second prong of Section 69(A)(2)(b). Employer contends Claimant's last exposure to the hazard of silicosis occurred in 2009 when he stopped working with white sand and his 2015 disablement occurred more than three years after that last injurious exposure. Thus, his occupational silicosis claim was barred.

¶37 In addressing this issue, the Commission stated:

The term "silicosis" is statutorily defined as "the characteristic fibrotic condition of the lungs caused by the inhalation of silica dust." Thus, a claim for silicosis must be filed within one year of the time of disablement and within three years from the date of last injuries [sic] exposure to silica dust. It is undisputed that Claimant suffers from silicosis. It is also undisputed that Claimant sandblasted with white, silica-based sand until 2009 or 2010. Thereafter, Claimant sandblasted using only a black, steel-based sand known as "Black Beauty."

The AWCA directs the Commission to "make specific, on-the-record findings of ultimate facts responsive to the issues shaped by the evidence[.]" Both the claimant and respondent submitted a Safety Data Sheet for the "Black Beauty" sand used by Claimant from approximately 2010 to 2015. According to the Safety Data Sheet, Black Beauty sand contains an identifiable amount of crystalline silica, "may irritate respiratory tract, . . . and may cause inflammation and pulmonary fibrosis." The evidence establishes that Claimant sandblasted with black sand containing an identifiable amount of crystalline silica until 2015. Because the evidence establishes that claimant's dates of disablement and last exposure occurred in 2015, we find his claim for occupational silicosis was filed timely pursuant to 85A O.S. §§ 69(A)(2)(B).

¶38 As noted by the Commission, the Safety Data Sheet for Black Beauty (black sand) emphasized as "immediate concerns" that the "dust may irritate the respiratory tract" and "may cause inflammation and pulmonary fibrosis." The Safety Data Sheet further provided that "[a]brasive blasting agents may cause inflammation and pulmonary fibrosis. Ingestion of dusts generated during working operations may cause nausea and vomiting." It also recommended "use of respiratory protective equipment" when using Black Beauty.

¶39 In addition, Claimant testified he continued to be exposed to dust and fumes after Employer stopped using white sand in 2009 and this exposure continued until he stopped working for Employer. Furthermore, although Employer now argues the black sand did not provide injurious exposure to silica, Employer still required employees to use protective equipment, such as a respirator, while working with the black sand.

¶40 "The question of what constitutes a 'hazardous exposure' is one of fact." Nat'l Zinc Co. v. Hainline, 1961 OK 6, ¶ 22, 360 P.2d 236, 240. As previously mentioned, we will affirm the Commission's order with respect to issues of fact if supported by substantial evidence. Mullendore, 2019 OK 11 ¶ 13, 438 P.3d at 363.

¶41 The Commission entered a thorough Order outlining the evidence supporting its finding. In view of the reliable, material, probative, and substantial competent evidence, we hold the Commission did not err in finding that Claimant's last exposure occurred on September 24, 2015, and his claim for occupational silicosis was timely filed pursuant to 85A O.S. Supp. 2015, § 69(A)(2)(b).

¶42 Next, Employer alleges the Commission's decision that Claimant sustained compensable work-related injuries was not supported by reliable, material, probative, and substantial competent evidence.

The term 'substantial evidence' means something more than a scintilla of evidence and means evidence that possesses something of substance and of relevant consequence such as carries with it fitness to induce conviction, and is such evidence that reasonable men may fairly differ as to whether it establishes a case. The determination of whether there is substantial evidence in support of the Commission's order does not require that the evidence be weighed, but only that the evidence in support of the order be examined to see whether it meets the above test.

Cent. Okla. Freight Lines, Inc. v. Corp. Comm'n, 1971 OK 57, ¶ 15, 484 P.2d 877, 879. "Searching a record for substantial evidence supporting the order appealed does not entail a comparison of the parties' evidence to determine that which is most convincing. [Rather, substantial evidence is] something more than a scintilla; . . ." Sundown Energy, L.P. v. Harding & Shelton, Inc., 2010 OK 88, ¶ 9, 245 P.3d 1226, 1229-30 (citations omitted).

¶43 Claimant testified that he worked as a sandblaster and painter for Employer for approximately eight years. Claimant stated that his protective equipment failed to protect him from inhaling dust daily. He inhaled dust when he took off his mask, which he stated occurred at least five times per day. Claimant also testified he worked in Building 7 at least once a week, which involved sandblasting inside an enclosed space containing dust that was not removed from the workspace. It is undisputed that Claimant was regularly exposed to dust and paint fumes throughout his employment as a sandblaster and painter for Employer.

¶44 In addition, Claimant introduced medical evidence in support of his claims. In his July 16, 2020, medical report, Kenneth R. Trinidad, D.O. concluded Claimant has "[s]ilicosis with severe interstitial lung disease resulting from cumulative trauma with a date of awareness of silicosis of September 30, 2015." Dr. Trinidad opined Claimant "sustained injuries and work-related trauma that occurred on a cumulative basis during eight years of employment with [Employer]
. . . ." Dr. Trinidad elaborated:

He has sustained an occupational lung injury from initial exposure to sand followed by "black beauty" which is a silicone product, in addition to exposure to various respiratory irritants in the paint department.

Dr. Trinidad noted that Claimant's injury was the major cause of his need for medical care.

¶45 In the deposition introduced by Claimant, Dr. Blankenship testified that Claimant's "preoperative diagnosis was left spontaneous pneumothorax with a persistent air leak" and a restrictive lung disease.[5] Dr. Blankenship confirmed he diagnosed Claimant with silicosis. He also stated that the biopsy he performed showed "cells that were - - that are infiltrated with dust . . . foreign fine particulate matter."[6] Dr. Blankenship explained that "working in a closed space . . . even if you use a helmet or a mask . . . you can still get - - fine particulate matter can go through it. . . . [A] filter is a filter but it doesn't necessarily filter everything out."[7] Dr. Blankenship confirmed, based on a reasonable degree of medical certainty, that Claimant's condition was caused by his work at Employer.[8] In a letter dated December 9, 2015, Dr. Blankenship stated "[Claimant] was found to have severe damage to his lung due to occupational exposure to sand, dust, chemicals, paints, etc."

¶46 Claimant also introduced the medical report of Dennis M. Parker, M.D., dated May 1, 2017. Claimant was referred to Dr. Parker for evaluation by Employer. Dr. Parker opined that Claimant's diagnosis of silicosis was not questioned.

¶47 In addition, Anne S. May, M.D. found Claimant 100% temporarily totally disabled because of his lung condition "as a result of the constant exposure he experienced to toxic fumes as well as silica dust in the course of his employment with [Employer], with date of last exposure of September 30, 2015." Dr. May opined "that as a result of the constant exposure to toxic fumes and dust the patient experienced in the course of his employment with [Employer], he experienced cumulative trauma injury to his lungs that resulted in silicosis with emphysema and bleb formation."

¶48 Furthermore, it is undisputed that Claimant was a nonsmoker, had not previously worked as a sandblaster, and was not exposed to dust outside of work. In addition, Claimant had no prior complaints of respiratory or lung issues.

¶49 Our role is not to reweigh the evidence but to determine whether there is reliable, material, probative, and substantial competent evidence to support the Commission's decision. Wiljo Interiors, Inc. v. Rials, 2017 OK CIV APP 27, ¶ 15, 394 P.3d 327, 330-31. We find there is reliable, material, probative, and substantial competent evidence to support the Commission's decision that Claimant sustained a compensable work-related injury.

¶50 Employer next contends that Claimant's cumulative trauma claim is barred by the statute of limitations set forth in 85A O.S. Supp. 2015, § 69(A). Employer argues Claimant's date of last exposure to silica-based sand occurred in 2009 and Claimant did not file his cumulative trauma claim until December 10, 2015. Thus, according to Employer, his cumulative trauma claim is untimely.

¶51 Section 69(A)(1) provides:

A. Time for Filing.

1. A claim for benefits under this act, other than an occupational disease, shall be barred unless it is filed with the Commission within one (1) year from the date of the injury. If during the one-year period following the filing of the claim the employee receives no weekly benefit compensation and receives no medical treatment resulting from the alleged injury, the claim shall be barred thereafter. For purposes of this section, the date of the injury shall be defined as the date an injury is caused by an accident as set forth in paragraph 9 of Section 2 of this act.

¶52 First, we note that neither the ALJ nor the Commission addressed this issue in their opinions. Employer argued Claimant's cumulative trauma claim was untimely under Section 69(A)(1) in its Trial Brief, filed January 21, 2021. However, when questioned about this issue by the ALJ, Employer appeared to abandon this argument in the hearing before the ALJ.

¶53 This Court will not address an issue on appeal that was not first presented to the trial court. Bivins v. State ex rel. Okla. Mem'l Hosp., 1996 OK 5, ¶ 19, 917 P.2d 456, 464.

¶54 Regardless, in a cumulative trauma action, the statute of limitations is triggered by the date of last injurious exposure. Rolled Alloys, Inc. v. Wilson, 2018 OK CIV APP 43, ¶ 11, 418 P.3d 713, 717. As we previously determined, the date of last injurious exposure in this matter was September 24, 2015. Claimant filed the cumulative trauma claim on December 10, 2015. Thus, Claimant's cumulative trauma claim was timely filed pursuant to Section 69(A)(1).

¶55 Employer also argues the Commission's disregard of the protective equipment Employer required Claimant to use while sandblasting was "clearly erroneous in view of the evidence and was arbitrary and capricious." "'Arbitrary and capricious' is defined as action which is 'willful and unreasonable without consideration or in disregard of facts or without determining principle,' or 'unreasoning . . . in disregard of facts and circumstances.'" State ex rel. Bd. of Trustees of Teachers' Ret. Sys. v. Garrett, 1993 OK CIV APP 29, ¶ 6, 848 P.2d 1182, 1183 (citations omitted).

¶56 The Commission considered the evidence presented by both parties. We do not find the Commission's decision was arbitrary and capricious nor do we find error. We find this argument to be without merit.

CONCLUSION

¶57 Finding no error, we sustain the Commission's Order Vacating and Remanding the Decision of the Administrative Law Judge.

¶58 SUSTAINED.

BLACKWELL, P.J., and FISCHER, J., concur.

FOOTNOTES

[1] J. Asuncion Soto v. Exterran Holdings, Inc., Case Number 117,307 (September 27, 2019). Case Number 117,307 was consolidated with 117,373.

[2] Transcript, January 26, 2021, p. 31, lines 6-7.

[3] Section 78(C) has not been revised since the date of Claimant's injury.

[4] We recognize that this holding is contrary to In re Death of Strunk, 1991 OK CIV APP 130, 822 P.2d 1140, wherein a different division of this Court held that a finding of compensability does not have the requisite finality to invoke appellate jurisdiction. Under the facts of this case, we disagree with the analysis in Strunk and hold that the Commission's order finding compensability is a final order ripe for appellate review.

[5] Deposition of Robert Blankenship, M.D., October 14, 2016, p. 21.

[6] Id. at pp. 44-45.

[7] Id. at pp. 39-40.

[8] Id. at p. 41.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1991 OK CIV APP 130, 822 P.2d 1140, 63 OBJ 304, 
Death of Strunk, Matter of
Discussed

 
1993 OK CIV APP 29, 848 P.2d 1182, 64 OBJ 1081, 
State ex rel. Bd. of Trustees of Teachers' Retirement System v. Garrett
Discussed

 
2017 OK CIV APP 27, 394 P.3d 327, 
WILJO INTERIORS, INC. v. RIALS
Discussed

 
2018 OK CIV APP 43, 418 P.3d 713, 
ROLLED ALLOYS, INC. v. WILSON
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1952 OK 35, 241 P.2d 185, 205 Okla 696, 
LONG v. McMAHAN
Discussed

 
1961 OK 6, 360 P.2d 236, 
NATIONAL ZINC COMPANY v. HAINLINE
Discussed

 
1999 OK 84, 991 P.2d 1001, 70 OBJ 3139, 
Sneed v. McDonnell Douglas
Discussed

 
1971 OK 57, 484 P.2d 877, 
CENTRAL OKL. FREIGHT LINES, INC. v. CORP. COM'N
Discussed

 
1996 OK 5, 917 P.2d 456, 67 OBJ 206, 
Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed

 
2010 OK 88, 245 P.3d 1226, 
SUNDOWN ENERGY, L.P. v. HARDING & SHELTON, INC.
Discussed

 
2017 OK 72, 404 P.3d 863, 
GRAHAM v. D & K OILFIELD SERVICES
Discussed

 
2019 OK 11, 438 P.3d 358, 
MULLENDORE v. MERCY HOSPITAL ARDMORE
Discussed at Length

 
1982 OK 12, 640 P.2d 963, 
Hermetics Switch, Inc. v. Sales
Discussed at Length

 
1982 OK 17, 640 P.2d 1356, 
Toney v. Parker Drilling Co.
Discussed

Title 85A. Workers' Compensation

 
Cite
Name
Level

 
85A O.S. 69, 
Time for Filing - Failure to File - Persons under Disability
Discussed at Length

 
85A O.S. 78, 
Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA