EDMONDSON, J.:
 

 *360
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1 Emilee Ann Mullendore (Petitioner) was employed as a certified nursing assistant (CNA) with Mercy Hospital in Ardmore, Oklahoma during the time relevant to this matter. One of Petitioner's duties as a CNA included providing ice and water to her assigned patients. On March 22, 2014, while working during her assigned hospital shift, Petitioner entered the fifth floor nutrition room and assembled 8 separate one pound bags of ice for the patients. She then turned to open the door out of the nutrition room, took a step into the doorway and "I felt my right foot slip out to the right and then the top part of my leg and my knee turned in to the left."
 
 [1]
 
 Petitioner immediately fell onto the floor and was unable to walk on her leg. Petitioner had worked over six hours of her shift without difficulty before her accident. At the time, Petitioner was twenty-one (21) years old.
 

 ¶ 2 Ms. Mullendore was evaluated in the emergency room within a few hours after the accident complaining of "right knee pain - says she just stepped and fell."
 
 [2]
 
 The physician documented she had limited range of motion to the right knee with tenderness noted at the medial and lateral joint lines.
 
 [3]
 
 The x-ray of her knee showed no acute or structural abnormalities of the right knee, specifically noting "no fracture or dislocation."
 
 [4]
 
 The emergency room physician diagnosed her with "
 
 right knee injury
 
 ,
 
 initial encounter
 
 ."
 
 [5]
 
 Petitioner testified that before this fall, she had (1) no previous injuries to the right knee and (2) she had no complaints regarding the right knee and had never sought medical treatment for this knee. All evidence before this Court reflects that Petitioner had
 
 no prior
 

 injuries
 
 to this knee and that
 
 she had never previously sought medical treatment for her right knee.
 
 The physician experts for Petitioner as well as Respondent both acknowledge Petitioner had no prior history of an injury to this right knee.
 

 ¶ 3 A few days after the injury, Petitioner was evaluated in the Mercy Occupational Medicine Clinic. She had pain and swelling in the knee with a diagnosis of right knee derangement. On April 1, 2014 a MRI study of the right knee was conducted with a conclusion that Petitioner had a "linear tear of the hyaline articular cartilage of the medial patellar facet which measures 0.4 cm."
 
 [6]
 
 This MRI study goes further in finding that Petitioner's "quadriceps and patellar tendons, medial and lateral collateral ligaments, ACL and PCL are normal. Normal medial and lateral menisci."
 
 [7]
 
 Based on a reasonable degree of medical certainty, the treating medical provider diagnosed Petitioner with "right knee derangement".
 
 [8]
 
 Thus, the right knee x-ray reflected no fracture or dislocation, and the MRI reflected that all structures of the knee were normal, except for the tear in the hyaline articular cartilage and the small effusion. Respondent was then given a referral for an evaluation with an orthopedic surgeon.
 

 *361
 
 ¶ 4 Petitioner filed a claim before the Oklahoma Workers' Compensation Commission seeking the recovery of medical care for the injury and requested the reservation of the issue of whether she was entitled to recover temporary total disability benefits. Petitioner claimed she sustained a compensable injury on March 22, 2014 to her right knee as a result of an unexplained fall that arose out of her performing employment related services for the hospital. Respondent denied the claim contending the injury was not work-related but was idiopathic in nature, arising out of a condition that was personal to the Petitioner. Both parties retained a physician expert who conducted an exam, reviewed medical records and issued a written report. Neither expert testified at the hearing; the ALJ was provided their respective written reports.
 

 ¶ 5 Petitioner's physician expert noted that there was no evidence of prior work related or non-work related injuries to Petitioner's right knee. He noted that the MRI revealed a small joint effusion and a horizontally oriented linear tear of the hyaline cartilage of the medial patella facet. There was no abnormality in the cartilage of the lateral patellar facet. This expert also specifically noted that the MRI study of the knee revealed that the "quadriceps and patellar tendons, medial and collateral ligaments, ACL and PCL were all noted to be normal." The medial and lateral menisci were also normal.
 
 [9]
 
 Petitioner's expert opined that Ms. Mullendore's slip on the floor on March 22, 2014 is the "major cause of the injury and need for treatment to her right leg/knee."
 
 [10]
 
 This expert also expressed the opinion that Petitioner was in need of further medical treatment and recommended that "she be referred to a board-certified orthopedic specialist for further evaluation, a course of physical therapy and possible injections."
 
 [11]
 
 Petitioner's expert then concluded that "based upon the history provided by Ms. Mullendore, review of medical records, my examination as well as my experience and training, it is my opinion within a reasonable degree of medical certainty that the major cause of the injury arose out of and is the direct result of the employee's work-related accident sustained on March 22, 2014, while employed by the above employer."
 
 [12]
 

 ¶ 6 The physician expert for Mercy Hospital Ardmore ("Respondent") acknowledged in his report that Ms. Mullendore had no history of a prior injury to her right knee. He also discussed the MRI reflected a linear tear of the hyaline cartilage of the patellar facet of the right knee. Even though the record reflects that prior to March 22, 2014 Ms. Mullendore had (1) no prior injury to the right knee, (2) no prior complaints relating to the right knee, and (3) never sought medical treatment related to the right knee, Respondent's expert rendered the opinion that Petitioner had the following diagnoses related to her accident of March 22, 2014:
 

 No indication of work-related injury.
 

 The following diagnosis is
 
 unrelated
 
 , pre-existent or subsequent to her accident of 03/22/14:
 

 Patellofemoral
 
 [13]
 
 dysplasia
 
 [14]
 
 with acute subluxation
 
 [15]
 
 and relocation of the right knee, an idiopathic condition leading to an idiopathic fall. No injury occurring from the fall. All complaints related to the pre-existing patellofemoral condition.
 
 [16]
 

 Idiopathic means something that arises spontaneously or
 

 from an obscure or unknown cause
 

 or something peculiar to the individual.
 
 [17]
 
 Respondent's expert discusses in his report
 
 *362
 
 that Ms. Mullendore's explanation of what happened "sounds like a patellar dislocation."
 
 [18]
 
 He attributes the tear of the right knee hyaline cartilage to "the idiopathic subluxation relocation of her kneecap, a pre-existing condition leading to an idiopathic fall."
 
 [19]
 
 Using common language, it is his opinion that Ms. Mullendore had an unexplained movement or partial dislocation of her right knee which was a "pre-existing" condition that led to in his opinion an "idiopathic" fall while she was at work.
 

 ¶ 7 Respondent's expert offers a discussion and the following opinions:
 

 Ms. Mullendore stated that her knee went into a valgus posture and then corrected itself and after that she fell. She gives a history that sounds like a patellar dislocation and she has fairly passive patellar motion, especially medially, but without any specific apprehension. Her MRI shows what the radiologist refers to as a tear of the hyaline [
 
 sic
 
 ] cartilage, which is related to the idiopathic subluxation relocation of her kneecap, a pre-existing condition. She did not experience any injury at work. There was nothing about work that made her fall. She did not trip on any object. She did not say that her foot slipped on something on the floor or give any other such history. It is my opinion that Ms. Mullendore simply has a patellofemoral malalignment, and in adulthood this often leads to episodes of subluxation of the patella. The MRI findings are consistent with this condition and she should seek private orthopedic care for the treatment of this condition. It is my opinion that there is nothing about this episode that was a work-related injury.
 
 [20]
 

 He stated the MRI findings are consistent with "this condition", i.e., the patellofemoral malalignment which leads to episodes of subluxation in adulthood. However, the complete MRI report has no such finding; the entire findings are as follows:
 

 FINDINGS: Small joint effusion with estimated volume of 5 ml. There is a horizontally oriented linear tear of the hyaline cartilage of the medial patella facet. This measures 0.4 cm. The hyaline cartilage of the lateral patellar facet is normal.
 

 The quadriceps and patellar tendons, medial and lateral collateral ligaments, ACL and PCL. Normal medial and lateral menisci.
 

 Normal bone marrow signal. No bone contusion or fracture.
 

 CONCLUSION: THERE IS A LINEAR TEAR OF THE HYALINE ARTICULAR CARTILAGE OF THE MEDIAL PATELLAR FACET WHICH MEASURES 0.4 cm.
 
 [21]
 

 The report of the x-rays taken of Ms. Mullendore's knee on the date of this injury state:
 

 FINDINGS: The
 
 osseous structures are intact
 
 . No
 
 fracture or dislocation.
 
 No joint effusion.
 
 [22]
 
 (emphasis added).
 

 Neither the x-ray or the MRI report include a finding or discussion relating to patellofemoral malalignment, or dislocation.
 

 ¶ 8 Respondent's expert finally concludes:
 

 A. No permanent partial impairment to the right knee from work-related accident of 03/22/14, while an employee of Mercy Memorial Hospital;
 

 B. The patient sustained an idiopathic subluxation relocation of the right knee for which she may wish to seek private medical care.
 
 [23]
 

 ¶ 9 Petitioner's claim for benefits went to hearing before an Administrative Law Judge (ALJ) who concluded that "Claimant has failed to prove by preponderance of the evidence that she suffered a compensable injury to her RIGHT LEG (KNEE) on March 22,
 
 *363
 
 2014 within the meaning of 85A O.S., § 2 (9) (a) of the Administrative Workers' Compensation Act while employed by the Respondent."
 
 [24]
 
 In reaching this conclusion, the ALJ relied on the following findings: (1) Dr. John's findings with respect to causation that the cause of the episode to her right knee was due to a pre-existing condition, the patellofemoral dysplasia causing "subluxation and relocation of the right knee causing an idiopathic fall and not a work-related injury, (2) there was no evidence presented establishing any slip or trip obstacles in the Claimant's path, (3) Claimant's history of the fall on the date of injury was that her "knee gave out on her", and (4) Claimants history of the fall was that "she was walking out of the nutritional room when the bottom of my right knee went to the right and the top of my right knee went to the left and I felt a popping and crunching sensation that turned into sharp excruciating pain."
 
 [25]
 

 ¶ 10 Ms. Mullendore filed a Request for Review before the Workers' Compensation Commission. The Order issued by the ALJ was affirmed by the Workers' Compensation Commission En Banc. Ms. Mullendore then filed a Petition for Review; the Court of Civil Appeals affirmed the Order of the Workers' Compensation Commission En Banc.
 

 STANDARD OF REVIEW
 

 ¶ 11 The law in effect at the time of the injury controls both the award of benefits and the appellate standard of review.
 
 Vasquez v. Dillard's, Inc.,
 

 2016 OK 89
 
 ,
 
 381 P.3d 768
 
 ;
 
 Brown v. Claims Mgmt. Res. Inc.,
 

 2017 OK 13
 
 , ¶ 9,
 
 391 P.3d 111
 
 , 115. Appellate review of the judgment in this matter is set forth at 85A O.S. Supp. 2013 § 78 which provides in pertinent part:
 

 C. The judgment, decision or award of the Commission shall be final and conclusive on all questions within its jurisdiction between the parties unless an action is commenced in the Supreme Court of this state to review the judgment, decision or award made by an administrative law judge shall be stayed until all appeal rights have been waived or exhausted. The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:
 

 1. In violation of constitutional provisions;
 

 2. In excess of the statutory authority or jurisdiction of the Commission;
 

 3. Made on unlawful procedure;
 

 4. Affected by other error of law;
 

 5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;
 

 6. Arbitrary or capricious;
 

 7. Procured by fraud; or
 

 8. Missing findings of fact on issues essential to the decision.
 

 ¶ 12 Mullendore alleges both legal error concerning statutory interpretation and constitutional claims. The issues of a statute's constitutional validity and of its construction are questions of law subject to
 
 de novo
 
 review.
 
 Brown
 
 ,
 
 2017 OK 13
 
 , ¶ 10,
 
 391 P.3d at 115
 
 . Under this standard on appeal, we assume plenary, independent, and non-deferential authority to reexamine the lower tribunal's legal rulings.
 

 Id.
 
 ; see also
 

 Lee v. Bueno,
 

 2016 OK 97
 
 , ¶ 6,
 
 381 P.3d 736
 
 .
 

 ¶ 13 The interpretation and application of the statutes at issue in this matter, also implicates 85A O.S. Supp. 2013 § 78(c)(5). We previously noted that the language of this provision is similar to that used by this Court concerning its review of factual matters in other administrative proceedings.
 
 Brown,
 

 2017 OK 13
 
 , ¶ 11,
 
 391 P.3d at 115
 
 . Accordingly, with respect to issues of fact, the Commission's order will be affirmed if the record contains substantial evidence in support of the facts upon which it is based and is otherwise free of error.
 

 Id.
 

 ¶ 14 Petitioner also urges as error that the COCA has decided a question of substance in a way probably not in accord with applicable decisions of this Court in
 
 *364
 

 Pauls Valley Travel Center v. Boucher,
 

 2005 OK 30
 
 ,
 
 112 P.3d 1175
 
 .
 

 ANALYSIS
 

 ¶ 15 The Administrative Workers' Compensation Act defines compensable injury as follows:
 

 a. "Compensable injury"
 
 means damage or harm to the physical structure of the body
 
 , or prosthetic appliances, including eyeglasses, contact lenses, or hearing aids,
 
 caused solely as the result of either an accident
 
 , cumulative trauma or occupational disease
 
 arising out of the course and scope of employment
 
 . An "accident" means an event involving factors external to the employee that:
 

 (1) was unintended, unanticipated, unforeseen, unplanned and unexpected,
 

 (2) occurred at a specifically identifiable time and place,
 

 (3) occurred by chance or from unknown causes, and
 

 (4) was independent of sickness, mental incapacity, bodily infirmity or any other cause.
 

 85A O.S. Supp. 2013 § 2(9)(a), (emphasis added).
 

 ¶ 16 The Commission affirmed the ALJ's order that Mullendore failed to establish she suffered a "compensable injury" by a preponderance of the evidence. In arriving at this decision, the ALJ relied almost exclusively on the findings of the Respondent's expert that Mullendore had a pre-existing condition, a patellofemoral malalignment, that created an instability then causing her to fall and injuring her knee while at work. These findings will be affirmed only if the record contains substantial evidence in support of such facts.
 
 Brown,
 

 2017 OK 13
 
 , ¶ 11,
 
 391 P.3d at 115
 
 .
 

 ¶ 17 We next examine the record to determine whether there is substantial evidence to support these findings. As defined in the AWCA, Mullendore sustained a "compensable injury" if she can establish by a preponderance of the evidence that: (1) she suffered damage to her physical body, (2) caused solely as the result of an
 

 accident
 

 , cumulative trauma or occupational disease, and (3) arising out of the course and scope of employment. 85A O.S. Supp. 2013 § 2(9)(a). The record contains undisputed evidence that Mullendore suffered pain, swelling and a visible cartilage tear on the MRI study, which is clearly "damage to her physical body". The ALJ made a specific finding in her Order that "whether the injury was 'in the course of employment' was not disputed."
 
 [26]
 
 Thus, Mullendore clearly met this factor.
 

 ¶ 18 With respect to the requirements of "compensable injury" in § 2(9)(a), the only factor in dispute is whether Mullendore's injury was
 
 solely
 
 the result of an accident.
 
 [27]
 
 "Accident" is specifically defined in § 2(9)(a) as an event that (1) was unintended, unanticipated, unforeseen, unplanned and unexpected, (2) occurred at a specifically identifiable place, (3) occurred by chance or from unknown causes and (4) was independent of sickness, mental capacity or bodily infirmity or any other cause. We next consider whether Mullendore met her burden in establishing that her injury fits the definition of "accident" under § 2(9)(a).
 

 ¶ 19 Respondent's expert disputed that Mullendore's injury was "solely" caused by accident, asserting that her injury was the result of a pre-existing condition that caused her knee to become unstable and cause injury. He concluded that "the patient sustained an idiopathic subluxation relocation of the right knee"
 
 [28]
 
 and this was due to a
 
 previously unknown condition
 
 of patellofemoral malalignment. We take note that
 

 no other treating physician, MRI study or X-ray study
 

 has found that Mullendore had this "
 
 previously unknown"
 
 condition, ie. patellofemoral malalignment. As earlier discussed, "idiopathic" means something that arises spontaneously or
 

 from an obscure or unknown cause
 

 or something peculiar to the individual.
 

 *365
 

 [29]
 
 The very definition of "accident" in § 2(9)(a) is that an event occurs that was unplanned, unforeseen and from
 
 unknown causes.
 
 Thus, even Respondent's expert identifying Mullendore's knee injury as arising from unknown causes is
 
 consistent with
 
 the definition of "accident" as part of the definition of "compensable injury." 85A O.S. Supp. 2013 § 2(9)(a). Mullendore's injury occurred as she stepped out of the nutrition room at the hospital while performing her CNA duties, which meets the requirement of § 2(9)(a) as occurring at a "specifically identifiable time and place."
 

 ¶ 20 The final requirement of "accident" as set forth in § 2(9)(a), is that the event is "independent of sickness, mental incapacity, bodily infirmity, or any other cause." The only factor raised by Respondent that relates in any way to this final requirement is whether Mullendore was suffering from some type of "bodily infirmity" at the time of her fall on March 22, 2014. Respondent urged on appeal that "as with numerous other idiopathic injuries, there is a known cause- a
 
 previously unidentified pre-existing condition.
 
 "
 
 [30]
 
 This previously unidentified pre-existing condition as stated by Respondent's expert is a patellofemoral malalignment that in adulthood "often leads to episodes of subluxation of the patella."
 
 [31]
 
 Although Respondent's expert stated in his report that this conclusion is consistent with the MRI findings, the actual findings in the MRI report offer no substantiation for this diagnosis. Respondent's argument is that Ms. Mullendore had a pre-existing condition that was unknown to her, that caused an instability in her knee and the subsequent fall causing the cartilage tear. This argument lacks credibility.
 

 ¶ 21 The record evidence before us reflects: (1) Mullendore had
 

 never
 

 had any complaint or problem with her right knee prior to this incident, (2) Mullendore had no prior injury to the right knee, (3) Mullendore had never sought medical treatment for the right knee prior to her fall on March 22, 2014, (4) the initial treating physician in the ER diagnosed her with a right knee injury, (5) the X-ray taken on March 22, 2014 notes there is no dislocation in the right knee, (6) the same X-ray makes no mention of a patellofemoral malalignment, (7) the MRI study reflects a tear to the hyaline cartilage, but specifically notes all other tendons, ligaments and cartilage in the right knee as normal, (8) the MRI study does not note any patellofemoral malalignment of her right knee, or any evidence of any pre-existing condition, (9) Mullendore had immediate swelling and pain following her fall. We hold that the evidence before this Court does not contain "substantial evidence" to support the Commission's order affirming the ALJ's findings that Mullendore "failed to prove by a preponderance of the evidence that she suffered a compensable injury to her RIGHT LEG (KNEE) within the meaning of 85A O.S. § 2 (9)(a) of the Administrative Workers' Compensation Act while employed by the Respondent." In fact, we hold that this conclusion is
 
 against
 
 the clear weight of the evidence before us. The Commission's order will be affirmed
 
 only
 
 if the record contains substantial evidence in support of the facts, woefully absent in the record before us.
 
 Brown,
 

 2017 OK 13
 
 , ¶ 11,
 
 391 P.3d at 115
 
 . We further hold that there is a preponderance of evidence that Mullendore suffered a "compensable injury" within the meaning of § 2 (9)(a) as set forth in the AWCA. Respondent's arguments disputing Mullendore suffered a compensable injury are not credible.
 

 ¶ 22 In 2011 under the former Workers' Compensation Code, the legislature enacted
 
 85 O.S. 2011
 
 § 308 which specifically excluded "an injury resulting directly or indirectly from idiopathic causes" from the definition of "compensable injury." When the AWCA was enacted in 2013 this language was omitted by the Legislature from the definition of "compensable injury." Before 2011 we had a long line of cases addressing the issue of whether
 
 *366
 
 a worker could recover for injuries that were related in part to a known pre-existing condition of the employee/claimant.
 

 ¶ 23 In one of the more recent of those cases,
 
 Pauls Valley Travel Center v. Boucher
 
 ,
 
 2005 OK 30
 
 ,
 
 112 P.3d 1175
 
 , Boucher was walking a straight path, was not carrying anything, encountered no obstacles, did not slip or exert undue physical effort, and did not fall, but her knee simply "gave way" while walking to the cash register. It was established she had a pre-existing known injury to that right knee. We were faced with the question of whether claimant's injury arose out of her employment. We found that Boucher's knee "did not give way spontaneously, rather, an untoward step precipitated the harm that ensued".
 
 Id.
 
 ¶ 14,
 
 112 P.3d at 1182
 
 . We also noted that "even if employer did establish Boucher's proneness to injure herself because of a pre-existing defect, it does not follow as a matter of law, that her on-the-job injury stems solely from idiopathic harm that is not compensable."
 

 Id.
 

 ¶ 24 Further, we have recognized that the term accidental injury is not to be given a narrow or restricted meaning but rather is to be liberally construed.
 
 Choctaw County v. Bateman
 
 ,
 
 1952 OK 387
 
 ,
 
 208 Okla. 16
 
 ,
 
 252 P.2d 465
 
 ; also see,
 
 H.J. Jeffries Truck Line v. Grisham
 
 ,
 
 1964 OK 242
 
 ,
 
 397 P.2d 637
 
 (internal injury produced by work-connected strain or exertion is accidental in character).
 

 ¶ 25 In
 
 Halliburton Services v. Alexander,
 

 1976 OK 16
 
 ,
 
 547 P.2d 958
 
 , we held that "compensation benefits are not limited to perfectly healthy workmen" citing
 
 Fireman's Fund Insurance Co. v. Standridge,
 

 1970 OK 49
 
 ,
 
 467 P.2d 461
 
 . In
 
 Halliburton,
 
 the security guard employee sought to recover benefits for a fall he sustained when he was descending stairs as part of his routine work. It was undisputed that the employee had a pre-existing arthritic condition and that he had suffered a prior injury causing weakness of the back. The fall resulted solely from the sudden onset of back pain causing his left leg to give way and causing the fall leading to injury. As in the instant matter, the employer urged that the injuries arose from risks personal to the employee, idiopathic injuries, and thus were not accidental injuries arising out of employment. We rejected this argument and we found:
 

 Injury occurred within course of employment at a place claimant was expected to be while performing duties he was required to fulfill. Injury resulting from the fall was contributed to by the necessity to ascend and descend stairways, which was a factor peculiar to the employment.
 
 Where accidental injury results from a risk factor peculiar to the task performed it arises out of the employment, although the fall had its origin in idiopathy of the employee.
 

 Id.
 
 at ¶ 10,
 
 547 P.2d at 961
 
 (emphasis added).
 

 There is no credible evidence before this Court that Mullendore had a pre-existing injury so there is nothing before us to resolve in this respect.
 

 ¶ 26 Petitioner raised both legal and constitutional claims regarding the denial of her claim for workers' compensation benefits. This Court has long recognized that where relief is available on alternative non-constitutional grounds, we avoid reaching a determination on constitutional issues.
 
 Brown,
 

 2017 OK 13
 
 , ¶ 26,
 
 391 P.3d 111
 
 .
 
 [32]
 

 ¶ 27 The opinion of the Court of Civil Appeals is vacated. The opinion of the Workers' Compensation Commission is reversed. The opinion of the Administrative Law Judge is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 

 COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF WORKERS' COMPENSATION COMMISSION REVERSED; ORDER OF ADMINISTRATIVE LAW JUDGE REVERSED; CAUSE REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT
 

 GURICH, C.J., EDMONDSON, COLBERT, REIF, and COMBS, JJ, concur;
 

 KAUGER, J., concurs in part; dissents in part;
 

 WYRICK, V.C.J., (by separate writing) WINCHESTER, and DARBY, JJ., dissent.
 

 Wyrick, V.C.J., with whom Winchester, J., joins, dissenting:
 

 *367
 
 ¶ 1 An administrative law judge, the Workers Compensation Commission sitting
 
 en banc
 
 , and a three-judge panel of the Court of Civil Appeals all reviewed the evidence in this case and unanimously concluded that Emilee Mullendore failed to prove that her knee injury was compensable. Crucial to this conclusion was that Mullendore's expert witness based his compensability conclusion on a fact that did not exist: that Mullendore "slipped on a wet floor while getting ice." That fatal flaw in the expert's conclusion left Mullendore unable to meet her burden of proof.
 

 ¶ 2 The majority entirely omits this critical fact from its opinion, and then misapplies the law to its abridged facts by applying the standard of review in a way that effectively shifts the burden of proof to Mullendore's employer, in contradiction of the governing statute. I respectfully dissent.
 

 I.
 

 ¶ 3 The Court should have considered all the facts that support the judgment below, and not just those that support reversal. Had it done so, it would have found that the facts support the judgment of the many judges and commissioners below who concluded that Mullendore's injury was noncompensable because it involved only factors internal to her.
 

 ¶ 4 On March 22, 2014, twenty-one-year-old Mullendore injured her right knee while working as a certified nursing assistant at Mercy Hospital Ardmore.
 
 [1]
 
 Mullendore was carrying bags of ice from the nutrition room for her patients when her knee gave out and she fell.
 
 [2]
 
 According to her various accounts of what happened, Mullendore's knee gave out on her after her lower leg went one direction and her upper leg went the other, causing a temporary dislocation (by her own account) that somehow resolved itself (by account of the imaging that failed to reveal any dislocation).
 
 [3]
 
 Prior to this fall, Mullendore had no
 
 *368
 
 complaints regarding her right knee. Her right knee had suffered no previous injury, and nothing like this had ever happened before.
 
 [4]
 

 ¶ 5 Mullendore was asked at her hearing whether she had slipped on any substance on the floor. Mullendore agreed that she was not aware of anything on the floor and that she did not see anything on the floor; in fact, according to Mullendore, had she seen anything on the floor, she "would have picked it up or wiped it up with paper towels."
 
 [5]
 
 It was thus uncontroverted that Mullendore's fall was not caused by some slippery substance on the floor, but rather was the result of her knee giving out.
 

 ¶ 6 To date, the only evidence of physical damage to Mullendore's knee is a 0.4-centimeter-long tear in the cartilage of her right knee. The X-rays obtained in the ER on the date of injury showed no abnormalities.
 
 [6]
 
 At the follow-up visit on March 25th, the physician's assistant who saw Mullendore diagnosed her with "knee derangement" and ordered an MRI scan.
 
 [7]
 
 The MRI scan was conducted on April 4, 2014, and revealed the cartilage tear ; everything else appeared normal in the MRI scan.
 
 [8]
 

 ¶ 7 Mullendore's employer has consistently argued that the injury is not compensable because it was solely caused by an idiopathic condition, which is "a disease of unknown cause,"
 
 [9]
 
 a "condition not preceded or occasioned by any other disease,"
 
 [10]
 
 and "[a] self-originated injury."
 
 [11]
 
 As defined by this Court, an "idiopathic fall" is a fall "induced by a spontaneous internal condition,"
 
 [12]
 
 or a fall "resulting from causes arising out of the mental or physical condition of the employee and not connected with the employment."
 
 [13]
 

 *369
 
 ¶ 8 An expert retained by Mullendore's employer reviewed the relevant medical records and radiographic images and interviewed and examined Mullendore. The expert concluded that Mullendore suffers from patello-femoral malalignment-a previously unidentified pre-existing condition-that can cause her right kneecap to dislocate out-of-socket and to relocate into socket. The employer's expert believes that just that sort of "subluxation and relocation" is what happened on March 22, 2014, causing the tear in her cartilage on that date.
 
 [14]
 
 The employer's expert further opined that this pre-existing condition was the sole cause of Mullendore's injury and that "[t]here was nothing about work that made her fall."
 
 [15]
 
 In other words, "[t]he patient sustained an
 
 idiopathic
 
 subluxation relocation of the right knee."
 
 [16]
 

 ¶ 9 Mullendore's expert predictably disagreed, concluding that Mullendore suffered from "[a]cute traumatic injury to the right leg/knee resulting in anatomical abnormalities due to a horizontally oriented linear tear of the Hyaline cartilage of the medial patella facet."
 
 [17]
 
 In other words, to the extent he saw any abnormalities with the anatomy of her knee, Mullendore's expert thought they were the result of the fall, not the cause. The expert, however, mischaracterized the cause of her fall, stating twice in his report that "she slipped on a wet floor while getting ice."
 
 [18]
 
 As previously discussed,
 
 [19]
 
 Mullendore denied slipping on anything on the floor, thus rendering her expert's conclusion unreliable in the eyes of the administrative law judge and the Commission.
 

 ¶ 10 The flaw in Mullendore's expert's report proved fatal at every stage of litigation. The ALJ found that "Dr. M. Stephen Wilson's report (Claimant's Exhibit #3) stating the major cause of the Claimant's injury on March 22, 2014 and need for medical treatment of her RIGHT LEG (KNEE) was when she 'slipped on a wet floor' while getting ice for a patient
 
 is not supported by the evidence
 
 " and that, "[b]ased on the foregoing, ... the Claimant has failed to prove by a preponderance of the evidence that she suffered a compensable injury."
 
 [20]
 
 That finding was unanimously affirmed by both the Workers' Compensation Commission sitting
 
 en banc
 
 and the Court of Civil Appeals.
 
 [21]
 

 ¶ 11 Despite repeatedly citing Mullendore's expert's opinion as supporting a finding of compensability, the majority inexplicably glosses over the report's flaw
 
 [22]
 
 -the very flaw that was the linchpin of the judgment below. Had the majority accounted for the expert opinion's mistake of fact, it too would have discounted the report's probative value, leaving Mullendore lacking proof that her injury was compensable.
 

 II.
 

 ¶ 12 With the critical fact omitted, the majority further paves its road to reversal by misapplying the AWCA's standard of review. Section 78(C)(5) of the AWCA requires this Court to determine that the judgment
 
 *370
 
 below was "
 
 clearly erroneous
 
 in view of the reliable, material, probative, and substantial competent evidence" before reversing it.
 
 [23]
 
 Until today, the "clearly erroneous" standard of review indicated some level of deference to the judgment below.
 
 [24]
 
 The majority nods to the statutory language, but treats the standard of review as permitting a de novo reweighing of evidence. It does so by emphasizing the phrase "substantial competent evidence"
 
 [25]
 
 : "[t]he Commission's order will be affirmed
 
 only
 
 if the record contains substantial evidence in support of the facts, which are woefully absent in the record before us."
 
 [26]
 
 The majority then makes credibility determinations with respect to Mullendore's employer's evidence before concluding that "there is a preponderance of evidence that Mullendore suffered a 'compensable injury.' "
 
 [27]
 

 ¶ 13 Section 78 prohibits this sort of reweighing of evidence. It certainly allows
 
 the Commission
 
 to reverse or modify the ALJ's decision if it is "against the clear weight of the evidence,"
 
 [28]
 
 a standard of review that has historically been understood to allow some weighing of the evidence.
 
 [29]
 
 But the Court is given a quite different standard of review, as it can reverse the judgment only where it is "
 
 clearly erroneous
 
 in view of the reliable, material, probative, and substantial competent evidence."
 
 [30]
 
 Had the Legislature intended for this Court to conduct a reweighing of the evidence identical to that conducted by the Commission, it would have given the Court an identical standard of review, as it has done in the past. Indeed, section 78(C)(5)'s precursors-section 340(D)(4) of the Workers' Compensation Code and section 3.6(C)(4) of the Workers' Compensation Act-both authorized the Court to reverse or modify an order of the Workers' Compensation Court sitting
 
 en banc
 
 if the order "was against the clear weight of the evidence."
 
 [31]
 
 The Legislature abandoned that parallel construct when it drafted section 78(C)(5), indicating that it intended to abandon the old standard of review in place of a new standard of review that requires this Court to defer to findings made below.
 

 ¶ 14 Moreover, the standard of review must also be understood in light of the AWCA's command that "[
 
 t
 
 ]
 
 he injured employee
 
 shall prove
 
 by a preponderance of the evidence
 
 that he or she has suffered a compensable injury."
 
 [32]
 
 Thus, in a case where the judgment below is in favor of the employee, the search for substantial evidence in support of that judgment might make sense. But because the employer by statute has no burden at all, review of a judgment in favor of the employer must necessarily entail reviewing the evidence put on by the
 
 employee
 
 , to determine whether it was "clearly erroneous" for the court below to have concluded that the employee failed to meet their burden. By shifting the inquiry in a case from "Is there substantial evidence that this was a compensable injury?" to "Is there substantial evidence that this was a
 
 non
 
 -compensable injury?" the majority effectively shifts the burden of proof to Mullendore's employer, in contradiction of the statute.
 

 *371
 
 ¶ 15 Because the AWCA requires that Mullendore use "
 
 medical evidence
 
 supported by objective findings" to establish compensability,
 
 [33]
 
 which may include a medical opinion so long as such is stated within a reasonable degree of medical certainty,
 
 [34]
 
 we should be asking whether the judgment below was clearly erroneous in concluding that Mullendore failed to produce adequate medical evidence. Mullendore presented testimony that her knee "gave out" and a medical expert's report that was unreliable insofar as his causation opinion misstated the basic facts about how and why the fall occurred.
 
 [35]
 
 As recognized by the ALJ, Mullendore's evidence thus failed to establish by a preponderance of the evidence that her injury was compensable.
 
 [36]
 
 This was so because without her expert's conclusion that she slipped on something on the floor, she had no evidence that her injury occurred as a result of "factors external to the employee" and was "independent of ... bodily infirmity."
 
 [37]
 
 Beyond that, Mullendore's employer presented a medical expert's report demonstrating that there was an idiopathic explanation for how and why Mullendore's injury occurred.
 
 [38]
 
 Due to Mullendore's failure to present "medical evidence" of any "factors external to the employee" that caused her injury, the majority's conclusion that her employer's expert evidence "lacks credibility" is irrelevant because her employer has no obligation to prove anything.
 
 [39]
 
 The burden of proof lies entirely with Mullendore, and if she has not met her burden of proof, she cannot win-regardless of what one thinks of her employer's rebuttal evidence.
 

 ¶ 16 Even relying on the majority's shorthand reference to the standard of review as requiring us to search for "substantial evidence in support of the facts upon which [the Commission's order] is based,"
 
 [40]
 
 this Court has long emphasized:
 

 Searching a record for substantial evidence supporting the order appealed
 
 does not entail a comparison of the parties' evidence
 

 *372
 

 to determine that which is most convincing
 
 but only that the evidence supportive of the order be considered to determine whether it implies a quality of proof inducing a conviction that the evidence furnished a substantial basis of facts from which the issue could be reasonably resolved. Substantial evidence has been additionally outlined as
 
 something more than a scintilla
 
 ; possessing something of substance and of relevant consequence carrying with it a fitness to induce conviction, but remains such that reasonable persons may fairly differ on the point of establishing the case. A determination of substantial evidentiary support
 
 does not require weighing the evidence
 
 but only a measurement of the supportive points to determine whether the criterion of substantiality is present.
 
 [41]
 

 We have thus always recognized that "substantial evidence" is a term of art that does
 
 not
 
 mean "more evidence than one's opponent," but rather merely requires that there be "more than a scintilla" of competent evidence supporting the judgment. Here, if the correct standard of review is applied to a full version of the facts, there undoubtedly exists "more than a scintilla" of evidence supporting the judgment. Indeed, if reasonable minds could reach the same conclusion as the ALJ-and I certainly don't think the three commissioners and three appellate judges who already affirmed the ALJ's judgment are unreasonable people-then the "clearly erroneous" standard requires that we affirm the judgment.
 

 * * *
 

 ¶ 17 At first glance today's decision seems like nothing more than fact-bound error correction gone awry. But the majority's apparent adoption of a standard of review expressly rejected by the Legislature when it enacted the AWCA is indicative of a broader and more troublesome trend of decisions of this Court reverting our workers' compensation laws to what they were prior to the AWCA. The opinion of the Court may lack the usual single subject/special law/substantive due process features so typical of the Court's invalidation of the Legislature's lawsuit reforms, but it undermines those reforms no less, and is merely the latest in the Court's death-by-a-thousand-cuts dismantling of the Legislature's efforts.
 
 [42]
 
 I respectfully dissent.
 

 [1]
 

 Official audio recording of August 26, 2014 hearing before Patricia Sommer, Administrative Law Judge, Emilee Anne Mullendore, Employee-Claimant v. Mercy Hospital Ardmore, Employer-Respondent, Self-Insured Employer (Own Risk #17461), Insurer, Commission File No.: CM-2014-04013R, Before the Oklahoma Workers' Compensation Commission.
 

 [2]
 

 Record, p. 35, ER Records, Mercy Hospital Ardmore, 3-22-14.
 

 [3]
 

 Record, p. 37, ER Records, Mercy Hospital Ardmore, 3-22-14.
 

 [4]
 

 Record, p. 65, Mercy Clinic Ardmore, 3-25-14.
 

 [5]
 

 Record, p. 38, ER Records, Mercy Hospital Ardmore, 3-22-14.
 

 [6]
 

 Record, p. 72, Mercy Clinic Ardmore, MRI Knee WO Contrast Right, 4-1-14.
 

 [7]
 

 Id
 
 .
 

 [8]
 

 Record, p. 65, Mercy Clinic Ardmore, Progress Notes, 3-25-14
 

 [9]
 

 Record, pp. 73-76, Rehabilitation Medicine of Oklahoma, M. Stephen Wilson, M.D., report dated May 19, 2014.
 

 [10]
 

 Id.
 

 [11]
 

 Id.
 

 [12]
 

 Id.
 

 [13]
 

 Patellofemoral is defined as of or relating to the patella and the femur; https:www.meriam-webster.com/medical/patellofemoral
 

 [14]
 

 Dysplasia is defined as an abnormal growth or development or broadly defined as an abnormal anatomical structure; https:www.meriam-webster.com/dictionary/dysplasia
 

 [15]
 

 Subluxation is defined as a partial dislocation as in one of the bones in a joint; https:www.meriam-webster.com/dictionary/subluxation
 

 [16]
 

 Record, pp. 90-95, Andrew C. John, M.D. PLLC, report dated July 1, 2014.
 

 [17]
 

 https://www.merriam-webster.com/dictionary/idiopathic
 

 [18]
 

 Record, pp. 90-95, Andrew C. John, M.D. PLLC, report dated July 1, 2014.
 

 [19]
 

 Id.
 

 [20]
 

 Id.
 

 [21]
 

 Record, p. 61 MRI Knee w/o contrast right, dated 4-1-14.
 

 [22]
 

 Record, p. 41, Mercy Hospital Ardmore, x-ray right knee, 3-22-14.
 

 [23]
 

 Record, pp. 90-95, Andrew C. John, M.D. PLLC, report dated July 1, 2014.
 

 [24]
 

 Record, pp. 26-29, Order Denying Compensability, September 26, 2014, Emilee Anne Mullendore, Employee-Claimant v. Mercy Hospital Ardmore, Employer-Respondent, Self-Insured Employer (Own Risk #17461), Commission File No. CM-2014-04013B, Before the Oklahoma Workers' Compensation Commission.
 

 [25]
 

 Id.
 

 [26]
 

 Id.
 

 [27]
 

 There were no issues raised about cumulative trauma or occupational disease.
 

 [28]
 

 Record, pp. 90-95, Andrew C. John, M.D. PLLC, report dated July 1, 2014.
 

 [29]
 

 https://www.merriam-webster.com/dictionary/idiopathic
 

 [30]
 

 Motion to Strike Brief in Chief and Answer Brief of Respondent/Appellee,
 
 Emilee Anne Mullendore, Petitioner, vs. Mercy Hospital Ardmore, Self Insured and The Workers' Compensation Court, sic., Respondents
 
 , In the Supreme Court of the State of Oklahoma, No. 113,560.
 

 [31]
 

 Record, pp. 90-95, Andrew C. John, M.D. PLLC, report dated July 1, 2014.
 

 [32]
 

 Citing,
 
 Bd. Of County Com'rs of Muskogee County v. Lowery
 
 ,
 
 2006 OK 31
 
 , ¶ 14,
 
 136 P.3d 639
 
 , 649 ;
 
 State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.
 
 ,
 
 2003 OK 29
 
 , ¶ 12,
 
 66 P.3d 432
 
 , 439.
 

 [1]
 

 ROA, Doc. 33, Audio Recording of Hr'g at 8:01-:18,
 
 Mullendore v. Mercy Hosp. Ardmore
 
 , No. CM-2014-04013R (Okla. Workers' Comp. Comm'n held Aug. 26, 2014).
 

 [2]
 

 Id.
 

 at 11:04-:53, 24:30-:40; ROA, p. 35, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Hosp. Ardmore's ER Records at 1; ROA, p. 79, Doc. 26, Claimant's Ex. 5, Mercy Confidential Co-Worker Incident Report at 2.
 

 [3]
 

 In an incident report filled out only minutes after the fall, a supervisor documented that Mullendore's "knee felt like [it] had popcorn in it[,] then sharp pain, [at which point she] went to [the] floor." ROA, p. 79, Doc. 26, Claimant's Ex. 5, Mercy Confidential Co-Worker Incident Report,
 
 supra
 
 note 2, at 2;
 
 see also
 
 ROA, p. 80, Doc. 26, Claimant's Ex. 5, Mercy Workers' Compensation Program Supervisor Incident Evaluation at 1 ("Walking out of nutrition room, put ® [i.e., right] foot down, felt like popcorn in ® knee then sharp pain then to floor."); ROA, Doc. 33, Audio Recording of Hr'g,
 
 supra
 
 note 1, at 21:32-:52 (estimating that she was finished filling out the incident report within 15 to 20 minutes of the fall).
 

 In the emergency room records created only hours after the fall, medical personnel reported: "Patient states she was carrying bags of ice down [the] hall
 
 when [her] knee gave out on her
 
 . She is unsure if she fell onto it[,] but states
 
 she felt sharp grinding/popping as it gave out on her
 
 ." ROA, p. 35, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Hosp. Ardmore's ER Records,
 
 supra
 
 note 2, at 1 (emphasis added);
 
 see also
 
 ROA, Doc. 33, Audio Recording of Hr'g,
 
 supra
 
 note 1, at 17:10-:43 (estimating that she was in the ER within one hour of the fall and acknowledging that, "as far as [she] c[ould] remember," she gave the history contained in her ER Records);
 
 id.
 
 at 24:44-25:01 (acknowledging again that she provided the history of what happened and that no one else talked for her in the ER).
 

 In a medical record from the follow-up visit three days after the fall, medical personnel recorded Mullendore's statement of what happened as follows: "I was walking out of the nutritional room
 
 when the bottom of my right knee went to the right and the top of my right knee went to the left and I felt a popping and crunching sensation
 
 that turned into sharp[,] excruciating pain." ROA, p. 65, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Clinic Ardmore's medical record at 2 (emphasis added);
 
 see also
 
 ROA, Doc. 33, Audio Recording of Hr'g,
 
 supra
 
 note 1, at 25:45-26:06 (acknowledging that she gave the history at her follow-up visit and that it was essentially the same as the history she provided in the ER three days earlier). At the hearing, Mullendore claimed this record did not accurately reflect what she told medical personnel, as she told them that the bottom of her right
 
 leg
 
 and the top of her right
 
 leg
 
 -not the bottom and top of her right
 
 knee
 
 -went in different directions. ROA, Doc. 33, Audio Recording of Hr'g,
 
 supra
 
 note 1, at 25:02-27:20.
 

 On direct examination at the workers' compensation hearing held five months after the fall, Mullendore testified that "[she] felt [her] right foot
 
 slip
 
 out to the right, and then the top part of [her] leg and [her] knee turned in to the left" and that "[i]t felt like there was popcorn in [her] knee.
 
 I've had a dislocated shoulder before, and whenever they popped it back into place, that's sort of what it felt like
 
 , except times twelve."
 
 Id.
 
 at 12:27-:39, 12:47-:56 (emphasis added). Later during direct examination, Mullendore's attorney summarized her testimony as follows: "You told me you were walking out of the nutrition room, you took a step, your right knee felt like it had popcorn on it, you felt a sharp pain, and you went to the floor, essentially."
 
 Id.
 
 at 15:43-:51. He asked her to affirm the correctness of his summary, which she did.
 
 Id.
 
 at 15:51-:52.
 

 [4]
 

 ROA, Doc. 33, Audio Recording of Hr'g,
 
 supra
 
 note 1, at 8:47-9:12, 12:40-:44; ROA, p. 65, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Clinic Ardmore's medical record,
 
 supra
 
 note 3, at 2 ("Previous injuries: Patient denies any.").
 

 [5]
 

 ROA, Doc. 33, Audio Recording of Hr'g,
 
 supra
 
 note 1, at 24:25-:42, 27:29-:43.
 

 [6]
 

 ROA, p. 37, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Hosp. Ardmore's ER Records,
 
 supra
 
 note 2, at 3; ROA, p. 41, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Hosp. Ardmore's Radiology All Orders and Results at 1 ("The osseous structures are intact. No fracture or dislocation. No joint effusion."); ROA, p. 65, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Clinic Ardmore's medical record,
 
 supra
 
 note 3, at 2 ("The patient went to the emergency room that day and x-rays were normal ....").
 

 [7]
 

 ROA, pp. 65-66, Doc. 22, Excerpt of Claimant's Ex. 1, Mercy Clinic Ardmore's medical record,
 
 supra
 
 note 3, at 2-3.
 

 [8]
 

 ROA, p. 72, Doc. 23, Claimant's Ex. 2, Mercy Clinic Ardmore's MRI Report at 1 ("There is a horizontally oriented linear tear of the hyaline cartilage of the medial patella facet. This measures 0.4 cm. The hyaline cartilage of the lateral patellar facet is normal. The quadriceps and patellar tendons, medial and lateral collateral ligaments, ACL and PCL are normal. Normal medial and lateral menisci. Normal bone marrow signal. No bone contusion or fracture.").
 

 [9]
 

 PDR Medical Dictionary 848 (Marjory Spraycar ed., 1995).
 

 [10]
 

 Webster's New International Dictionary 1237 (2d ed. 1959).
 

 [11]
 

 Dorland's Illustrated Medical Dictionary 660 (23rd ed. 1951).
 

 [12]
 

 Boardman Co. v. Eddy
 
 ,
 
 1961 OK 181
 
 , ¶ 6,
 
 363 P.2d 821
 
 , 823.
 

 [13]
 

 Moten v. Chandler Well Serv.
 
 ,
 
 1961 OK 125
 
 , ¶ 7,
 
 363 P.2d 153
 
 , 154. A classic example of an idiopathic injury is the worker who falls over dead from a heart attack while clocking out for the night. If the event was not brought on by work conditions, the event is noncompensable because work had nothing to do with it-it was just a condition peculiar to the employee that by happenstance reared its ugly head while the employee was at work rather than five minutes later when the employee was driving home.
 

 [14]
 

 ROA, pp. 93-94, Doc. 28, Resp't's Ex. 1, Dr. Andrew C. John's Expert Report at 4-5.
 

 [15]
 

 Id.
 
 at 93, Dr. Andrew C. John's Expert Report at 4.
 

 [16]
 

 Id.
 
 at 94, Dr. Andrew C. John's Expert Report at 5.
 

 [17]
 

 ROA, p. 75, Doc. 24, Claimant's Ex. 3, Dr. M. Stephen Wilson's Expert Report at 3.
 

 [18]
 

 Id.
 
 at 73, Dr. M. Stephen Wilson's Expert Report at 1 ("On March 22, 2014, Ms. Mullendore reported that she slipped on a wet floor while getting ice for patient and felt her knee pop.");
 
 id.
 
 at 75, Dr. M. Stephen Wilson's Expert Report at 3 ("Therefore, it is further my opinion that the employment-related accident Ms. Mullendore sustained on march [sic] 22, 2014, when she slipped on a wet floor while getting ice for a patient while employed by Mercy Memorial Health Center is the major cause of the injury and need for treatment to her right leg/knee.").
 

 [19]
 

 See supra
 
 note 5 and accompanying text.
 

 [20]
 

 ROA, pp. 27-28, Doc. 21, Order Denying Compensability at 2-3 (emphasis added).
 

 [21]
 

 ROA, p. 116, Doc. 32, Order Affirming Decision of Administrative Law Judge at 1;
 
 Mullendore v. Mercy Hosp. Ardmore
 
 , No. 113,560, slip op. at 1, 13 (Okla. Civ. App. May 2, 2016).
 

 [22]
 

 See
 
 Majority Op. ¶ 5 & n.10 ("Petitioner's expert opined that Ms. Mullendore's slip on the floor on March 22, 2014 is the 'major cause of the injury and need for treatment to her right leg/knee.' " (citing the entirety of Dr. Wilson's expert report) ).
 

 [23]
 

 85A O.S.Supp.2013 § 78(C)(5) (emphasis added).
 

 [24]
 

 E.g.
 
 ,
 
 State v. Vaughn
 
 ,
 
 2000 OK 63
 
 , ¶ 25,
 
 11 P.3d 211
 
 , 217 ("Case law imposes upon the appellate courts the obligation to accord substantial deference to the exercise of discretion by the trial court, and to reverse only if the trial court made a clearly erroneous decision against reason and evidence." (citing
 
 Abel v. Tisdale
 
 ,
 
 1980 OK 161
 
 ,
 
 619 P.2d 608
 
 ) ).
 

 [25]
 

 See
 
 Majority Op. ¶¶ 13, 17, 20-21.
 

 [26]
 

 See
 

 id.
 

 ¶ 21 (citing
 
 Brown v. Claims Mgmt. Res. Inc.
 
 ,
 
 2017 OK 13
 
 , ¶ 11,
 
 391 P.3d 111
 
 , 115 ).
 

 [27]
 

 See
 
 id.
 

 [28]
 

 § 78(A). Reversal or modification is also warranted where the decision's legal determination was "contrary to law."
 

 Id.
 

 [29]
 

 E.g.
 
 ,
 
 Hall v. Galmor
 
 ,
 
 2018 OK 59
 
 , ¶ 12,
 
 427 P.3d 1052
 
 , 1061 (citing
 
 Childers v. Childers
 
 ,
 
 2016 OK 95
 
 , ¶ 18,
 
 382 P.3d 1020
 
 , 1024 ;
 
 White v. Adoption of Baby Boy D.
 
 ,
 
 2000 OK 44
 
 , ¶ 36,
 
 10 P.3d 212
 
 , 220 ;
 
 Briggs v. Sarkeys, Inc.
 
 ,
 
 1966 OK 168
 
 , ¶ 29,
 
 418 P.2d 620
 
 , 624 ;
 
 Hitt v. Hitt
 
 ,
 
 1953 OK 391
 
 , ¶ 0,
 
 258 P.2d 599
 
 , 599 ).
 

 [30]
 

 § 78(C)(5) (emphasis added).
 

 [31]
 

 85 O.S.2011 § 340(D)(4) ; 85 O.S.Supp.2010 § 3.6(C)(4).
 

 [32]
 

 85A O.S.Supp.2013 § 2(9)(e) (emphasis added).
 

 [33]
 

 § 2(9)(d) (emphasis added).
 

 [34]
 

 Id.
 

 § 2(31)(b).
 

 [35]
 

 See supra
 
 notes 3, 5, 18-19 and accompanying text.
 

 [36]
 

 See supra
 
 note 20 and accompanying text.
 

 [37]
 

 § 2(9)(a) (defining a "compensable injury" as "damage or harm to the physical structure of the body ... caused solely as the result of ... an accident ... arising out of the course and scope of employment," and further defining an "accident" as "an event involving factors external to the employee that ... [among other things] was independent of sickness, mental incapacity, bodily infirmity or any other cause").
 

 [38]
 

 See supra
 
 notes 14-16 and accompanying text.
 

 [39]
 

 In this respect, the majority opinion also contains troublesome dicta suggesting that the AWCA's definition of "compensable injury" might include injuries caused in part by an idiopathic condition. The AWCA's definition of "compensable injury" does no such thing, however, because it only includes injuries "caused solely as the result of .... an event involving factors external to the employee" and thereby excludes any injury involving factors internal to the employee. § 2(9)(a). The majority instead focuses on whether Mullendore's injury was "caused solely as the result of ... an accident" as that term is defined in section 2(9)(a)(1) through (4) of the AWCA. Majority Op. ¶ 18. The majority concludes that it was, because Mullendore's injury met the statutory requirements that it be unplanned and unforeseen, occurred from unknown causes, and occurred at a specifically identifiable time.
 
 Id.
 
 ¶ 19. But when addressing "[t]he final requirement ... that the event [be] 'independent of sickness, mental incapacity, bodily infirmity, or any other cause,' " the majority refuses to acknowledge the implications that important limitation may have on determining whether an accident was the "sole cause" of injury because-disagreeing with every prior judge to look at the evidence in this case-it thinks that the evidence of Mullendore's bodily infirmity "lacks credibility."
 
 Id.
 
 ¶ 20 (quoting § 2(9)(a) );
 
 see also
 

 id.
 
 ¶¶ 21, 25 (calling Respondent's arguments "not credible" and finding "[t]here is no credible evidence before this Court that Mullendore had a pre-existing injury"). The majority then invokes pre-2011 case law that allowed a worker to "recover for injuries that were related in part to a known pre-existing condition."
 
 Id.
 
 ¶ 22;
 
 see also
 

 id.
 
 ¶¶ 23-25 (discussing the pre-2011 cases of
 
 Pauls Valley Travel Center v. Boucher
 
 ,
 
 2005 OK 30
 
 ,
 
 112 P.3d 1175
 
 , and
 
 Halliburton Services v. Alexander
 
 ,
 
 1976 OK 16
 
 ,
 
 547 P.2d 958
 
 ). That pre-2011 case law, however, was interpreting a different statute (i.e., 85 O.S. § 3(13) ), and thus tells us nothing about whether an injury
 
 not
 
 caused by "an event involving factors external to the employee" and
 
 not
 
 "independent of ... bodily infirmity" is compensable under the new law.
 

 [40]
 

 Majority Op. ¶ 13.
 

 [41]
 

 Sundown Energy, L.P. v. Harding & Shelton, Inc.
 
 ,
 
 2010 OK 88
 
 , ¶ 9,
 
 245 P.3d 1226
 
 , 1229-30 (emphasis added) (citations omitted) (citing
 
 Union Tex. Petroleum v. Corp. Comm'n
 
 ,
 
 1981 OK 86
 
 , ¶ 31,
 
 651 P.2d 652
 
 , 662 ;
 
 Cent. Okla. Freight Lines v. Corp. Comm'n
 
 ,
 
 1971 OK 57
 
 , ¶ 15,
 
 484 P.2d 877
 
 , 879 ;
 
 Chenoweth v. Pan Am. Petroleum Corp.
 
 ,
 
 1963 OK 108
 
 ,
 
 382 P.2d 743
 
 );
 
 see also
 
 Black's Law Dictionary 580 (7th ed. 1999) (defining "substantial evidence" as "[e]vidence that a reasonable mind would accept as adequate to support a conclusion; evidence beyond a scintilla").
 

 [42]
 

 See, e.g.
 
 ,
 
 Strickland v. Stephens Prod. Co.
 
 ,
 
 2018 OK 6
 
 , ¶ 15,
 
 411 P.3d 369
 
 , 376 (declaring the last sentence of 85A O.S.Supp.2013 § 5(A) an unconstitutional special law);
 
 John v. St. Francis Hosp., Inc.
 
 ,
 
 2017 OK 81
 
 , ¶ 1,
 
 405 P.3d 681
 
 , 683 (declaring 12 O.S.Supp.2013 § 19.1 -which required plaintiffs who would "be required to present the testimony of an expert witness to establish breach of the relevant standard of care and that such breach resulted in harm to [them]" to consult with, and to obtain a written opinion from, an expert witness prior to filing their lawsuits-was "an impermissible barrier to court access and an unconstitutional special law");
 
 Gibby v. Hobby Lobby Stores, Inc.
 
 ,
 
 2017 OK 78
 
 , ¶ 18,
 
 404 P.3d 44
 
 , 48 (declaring 85A O.S.Supp.2013 § 57 unconstitutional because it "violates the adequate remedy provision of Article II, section 6, of the Oklahoma Constitution");
 
 Maxwell v. Sprint PCS
 
 ,
 
 2016 OK 41
 
 , ¶ 27,
 
 369 P.3d 1079
 
 , 1093 (declaring 85A O.S.Supp.2013 §§ 45(C)(5) and 46(C) unconstitutional as violative of due process and as a special law, respectively);
 
 Vasquez v. Dillard's, Inc.
 
 ,
 
 2016 OK 89
 
 , ¶ 36,
 
 381 P.3d 768
 
 , 775 (declaring the Oklahoma Employee Benefit Injury Act, 85A O.S.Supp.2015 §§ 201 -213, an unconstitutional special law);
 
 Torres v. Seaboard Foods, LLC
 
 ,
 
 2016 OK 20
 
 , ¶ 48,
 
 373 P.3d 1057
 
 , 1079 (declaring the AWCA's definition of "cumulative trauma," 85A O.S.Supp.2013 § 2(14), unconstitutional as violative of due process);
 
 Douglas v. Cox Ret. Props., Inc.
 
 ,
 
 2013 OK 37
 
 , ¶ 12,
 
 302 P.3d 789
 
 , 794 (declaring the Comprehensive Lawsuit Reform Act of 2009 unconstitutional in its entirety as violative of the single-subject rule);
 
 Wall v. Marouk
 
 ,
 
 2013 OK 36
 
 , ¶ 0,
 
 302 P.3d 775
 
 , 776 (declaring 12 O.S.2011 § 19 -which required plaintiffs alleging professional negligence to consult with, and to obtain a written opinion from, a qualified expert in support of their claim prior to filing their lawsuits-was "a special law which violates the Okla. Const. art. 5, § 46" and also "an unconstitutional financial burden on access to the courts in violation of the Okla. Const. art. 2, § 6");
 
 Zeier v. Zimmer, Inc.
 
 ,
 
 2006 OK 98
 
 , ¶ 32,
 
 152 P.3d 861
 
 , 874 (declaring 63 O.S.Supp.2003 § 1-1708.1E -which required plaintiffs in medical malpractice tort suits to consult with, and to obtain a written opinion from, a qualified expert in support of their claim prior to filing their lawsuits-was an unconstitutional special law and monetary barrier to court access);
 
 cf.
 

 Maxwell
 
 ,
 
 2016 OK 41
 
 , ¶ 7,
 
 369 P.3d at 1096
 
 (Colbert, J. concurring in part, dissenting in part) (urging the Court to declare more of the AWCA unconstitutional and decrying the "the parade of horribles the [Court] creates in its piecemeal approach in remedying the AWCA's unconstitutional provisions").